100 So.2d 517 (1958)
Malcolm S. KLINE
v.
The GLOBE AUTOMOBILE FINANCE COMPANY et al.
No. 20842.
Court of Appeal of Louisiana, Orleans.
January 20, 1958.
Rehearings Denied March 3, 1958.
Writs of Certiorari Denied April 21, 1958.
*518 Benjamin E. Smith, New Orleans, for plaintiff-appellee and defendant-appellant.
Arthur V. Flotte, New Orleans, for Globe Automobile Finance Co., defendant-appellee and plaintiff-appellee.
Morphy & Freeman, New Orleans, for James T. Patterson and American Employers Ins. Co., defendants-appellants
JANVIER, Judge.
In the first of these two consolidated suits, Malcolm S. Kline is seeking to recover the value of his equity in a used 1950 Plymouth automobile which he had purchased on April 11, 1952, and which was completely destroyed in a collision on August 25, 1952. He also seeks to recover for the loss of the use of the car and for inconvenience resulting from his inability to collect from the insurer which carried the collision insurance on the car. His total claims amount to $3,060.
The defendants are James T. Patterson, an insurance broker who placed the collision insurance in an insurance company, apparently hopelessly insolvent, Patterson's bondsman, American Employers Insurance Company, and Globe Automobile Finance Company, a partnership through which the unpaid portion of the purchase price of the car was "financed" and which partnership, through Patterson, had secured the collision insurance.
Kline bases his claim against the three defendants on the charges that, through negligence on the part of Patterson, the insurance broker, the insurance was placed in an insolvent company not qualified to do business in Louisiana, and on the charge that there was collusion between Patterson and Globe Automobile Finance Company, which resulted in the placing of the insurance in such a company and that there was an illegal arrangement between Patterson and the Globe partnership under which that partnership received 20% of the premium paid on the collision insurance policy.
The American Employers Insurance Company is made defendant on the ground that it was the surety to the extent of $1,500 on the bond which Patterson was required by law to furnish when he was granted a license as an insurance broker.
In the second of the suits Globe Automobile Finance Company is attempting to collect from Kline the unpaid balance on the purchase price of the car, the amount claimed being $632.50, with interest, attorney's fees, etc. To this second suit Kline filed answer in which he in effect admitted his indebtedness for the unpaid balance, but set up a claim in reconvention based on the same charges which he had made against Globe Automobile Finance Company in his suit against that partnership and the other defendants.
There was judgment for $1,260 in favor of Malcolm S. Kline against the defendants, James T. Patterson, doing business as Interstate Insurance Agency, and American Employers Insurance Company in solido, and there was further judgment requiring that out of the said sum ($1,260) there *519 should be paid to Globe Automobile Finance Company the balance due it on the purchase price of the car, to-wit $632.50, with interest and attorney's fees, and there was further judgment dismissing the suit of Malcolm S. Kline against Globe Automobile Finance Company.
From this judgment Patterson and American Employers Insurance Company appealed. Kline also appealed from the judgment insofar as it dismissed his suit against the Globe Automobile Finance Company.
The pleadings in the suit in which Kline, as plaintiff, is seeking to recover the value of his destroyed car are quite complex and gave rise to an exception of vagueness, an exception of no cause of action and a plea of prescription of one year, all of which were overruled in the district court.
When Kline filed his original petition, he had never seen his collision insurance policy and had no knowledge as to how it had been obtained, nor even as to how or by whom it had been requested from the insurer. He knew that Globe Automobile Finance Company had bought his mortgage note from Coates Motor Sales, the used car dealer from whom he had purchased the car, but he did not know Patterson, the insurance broker through whom the insurance policy had been secured, and therefore in that first suit only Globe Automobile Finance Company was made defendant, and in that suit he charged that partnership with negligence and infidelity in obtaining the insurance in an insolvent company and in failing to "expeditiously" notify him when Globe Automobile Finance Company learned of these conditions.
In his first supplemental petition Kline merely attempted to correct certain erroneous allegations in his original petition as to the organizational status of Globe Automobile Finance Company and to make certain "minor" changes in the amount claimed. In his second supplemental petition Kline charged that Globe Automobile Finance Company had acted not only as his agent in securing the insurance, but had secured that insurance from an unauthorized insurer and through a broker who had illegally returned to it a certain part of the premium which had been charged. In his third supplemental petition, Kline made James T. Patterson, the insurance broker, and American Employers Insurance Company, his surety, defendants, alleging that Patterson, who conducted his insurance brokerage business as Interstate Insurance Agency, was the broker who had placed the insurance with the insolvent insurer, Enterprise Mutual Fire Insurance Company of Philadelphia, and that the said broker, Patterson, in placing the insurance in a company which was not authorized to do business in Louisiana, had not complied with the requirements of Section 1257 of LSA-R.S. 22, which regulates the operation of brokers known as "surplus line" brokers who, on placing insurance which cannot be placed with companies locally authorized to do business, may place it in companies not so authorized, but only on compliance with certain strict requirements of LSA-R.S. 22, which controls such surplus line insurance.
As already stated, when this third supplemental petition was filed and Kline sought to make Patterson and his insurer solidarily parties defendant, these two defendants filed exceptions of vagueness, no cause of action and a plea of prescription of one year.
We find no substance whatever in the exception of vagueness, nor is there any foundation in the exception of no cause of action. In support of the exception of no cause of action counsel for Patterson and his surety assert that all that is charged against Patterson is that he placed the insurance without ascertaining the financial status of the insurer. This supplemental petition, together with the other petitions, clearly charges that the insurer was insolvent and that any investigation would have developed this fact, and also that Patterson failed to comply with the requirements of the so-called surplus line statute in that he failed to investigate the financial *520 status of the insurer. And it also charges that he, Patterson, illegally made refunds or rebates to Globe Automobile Finance Company in violation of law. If these allegations are true, they clearly state a cause of action against Patterson and if against Patterson, then too against his surety.
The plea of prescription of one year is based on the theory that the suit against Patterson and against his surety is one sounding in tort and that therefore since more than one year elapsed between the occurrence of the loss and the filing of the third supplemental petition in which for the first time Patterson and his surety were made defendants, the suit against them should be dismissed on the plea of prescription of one year.
The suit against Patterson and his surety, though based on fault on his part, are plainly based on the alleged violation of his personal obligation to perform his duty as insurance broker and therefore the prescription applicable is that provided in LSA-Civil Code Article 3544 and not the prescription of one year which is applicable in tort actions. Furthermore, Patterson is sued as a solidary obligor resulting from his collaboration with Globe Automobile Finance Company as a result of which a totally insolvent insurer was obtained for Kline. Since Patterson is thus sued as a solidary obligor with Globe Automobile Finance Company, the suit against Globe served to interrupt any prescription which might otherwise have run in favor of Patterson. For both these reasons the plea of prescription was properly overruled.
The facts disclosed are complicated and a thorough understanding of them is essential.
On April 11, 1952, Kline bought the car in question from Coates Motor Sales, which is a trade name under which J. F. Coates operated his used car business in New Orleans. The purchase price was $1,436.85 to which was added a charge of $225.65, representing the cost of "financing" and the insurance premium. This premium is elsewhere shown to have been $70. Of this total cost of $1,662.50, Kline paid $800 in cash and, for the balance of $862.50, executed a note secured by chattel mortgage under private signature. This note was payable to Coates Motor Sales and, though it was dated April 11, 1952, it was paraphed for identification with the act of chattel mortgage which was not acknowledged until April 22, 1952. We gather from the evidence, though it is by no means certain, that of the $70 which was included in the total charge which represented insurance premiums, $42 was to be devoted to the premium on the collision insurance policy.
Kline did not himself arrange for the insurance, nor did the vendor, Coates. It was the Globe Automobile Finance Company which, as holder of the mortgage note, was especially interested in the securing of the insurance, and this partnership arranged for all insurance through its insurance broker, James T. Patterson. When Globe Automobile Finance Company employed Patterson as its broker to obtain the collision insurance, Patterson, who was what is known as a surplus line broker, placed this insurance in Enterprise Mutual Fire Insurance Company of Philadelphia, which was not licensed to do business in Louisiana. The policy was delivered to and was held by Globe Automobile Finance Company, and Kline was never told that his insurance had been placed in a company not authorized to do business in Louisiana. As already stated, the policy was never delivered to Kline, nor even seen by him though he, as owner of the car, was most interested in being certain that he was protected by a solvent insurer, and in fact Kline was never even told by either Patterson or Globe that his insurer was not qualified to do business in Louisiana.
The insurance premium was paid by Globe to Patterson and the necessary part thereof was paid by Patterson to Enterprise Mutual Fire Insurance Company of Philadelphia and that premium, of course, came *521 out of the amount which Kline had paid to Coates Motor Sales and which was included in the financing charge made by Globe, so that actually the premium was paid by Kline.
It is shown that, of the amount paid to Patterson, there was returned by credit entry to Globe a certain portion said to be 20% of the premium. There is a labored effort made by counsel for Globe to convince us that this rebate was actually received by Kline and was not retained by Globe and it may be that some small credit on his insurance premium was thus received by Kline, but whether it was or was not is of no great importance because we think that, in any event, Globe is liable to Kline for the loss resulting from the fact that the insurer was insolvent. Globe knew that it was because of its own record that there could not be obtained an insurer licensed to do business in Louisiana. That partnership well knew that this policy, together with innumerable others which Patterson had secured for it, had been obtained in companies not qualified to do business in Louisiana, most of them in fact in this same insurer, Enterprise Mutual Fire Insurance Company.
We do not mean to say that there was, ipso facto, anything illegal in placing insurance in such company in a company not locally licensed. The placing of such insurance is especially provided for in LSA-R.S. 22, particularly section 1257, et seq., where it appears that the required insurance protection cannot be obtained in a locally qualified company. The opening paragraph of section 1257 of Title 22 reads as follows:
"If certain insurance coverages cannot be procured from authorized insurers, such coverages, hereinafter designated as `surplus lines,' may be procured from unauthorized insurers subject to the following conditions: * * *"
In the first place, however, it is required that, before such insurance may be applied for in an unauthorized company, there must be filed with the surplus line broker a request for such insurance and in this request it must be stated that "after diligent effort" the insurance was found to be unobtainable "from authorized insurers."
Since Globe Automobile Finance Company undertook to place this insurance for itself and for Kline, it clearly was its duty to attempt to find an authorized insurer and to certify that an authorized insurer could not be obtained before it could call upon Patterson to place the insurance in an unauthorized company. It is conceded that no such statement was made. The fact is that Globe well knew that, because of its own bad loss record, authorized insurance could not be obtained. Possibly it may be said that since it had this knowledge, it was not required to vainly attempt to obtain authorized insurance since it already knew that it could not obtain it. This may be true, but since the reason for its inability was its own undesirable status and not the status of Kline, Kline should have been told of this situation.
In the same section of the surplus line statute it is provided that, within thirty days after the placing of such insurance, the surplus line broker must file with the secretary of state an affidavit stating that such request for unauthorized insurance had been made and that to the best of his knowledge and belief the coverage was not procurable from an authorized company. But most important, so far as Patterson is concerned, is the requirement found in section 1262 that any such broker licensed to place surplus line insurance "shall ascertain the financial condition of the unauthorized insurer before placing the insurance therewith," and the further requirement that he shall not place the insurance with any stock insurer "having capital and surplus amounting to less than two hundred thousand dollars, or with any other type of insurer having assets of less than two hundred thousand dollars of which not less than fifty thousand dollars is surplus." It is shown that at the time of the placing of this insurance the insurer, Enterprise *522 Mutual Fire Insurance Company of Philadelphia, did not have a surplus of $50,000 it amounted in fact to $40,754.92and that had any investigation been made by Patterson before placing that insurance, he would have undoubtedly discovered the deplorable financial condition of the insurer.
There is no doubt of the necessity and legality of resorting to surplus line insurance on certain occasions. Where this is necessary, a surplus line broker no doubt serves a very useful purpose. However, when it becomes necessary that insurance be so placed with an insurer not authorized to do business locally, it is of paramount importance that the broker comply strictly with the requirements of the surplus line statute so that there may thus be substituted by the broker's investigation and the broker's compliance with the requirements the security which would otherwise be provided where the insurance is placed in a locally authorized company which has provided the security which is required of such locally licensed companies.
Here the insurance was requested by Globe Automobile Finance Company, which partnership well knew that it was acting not only to protect its interests as holder of the mortgage, but also as the agent of Kline in obtaining insurance which would protect him. Knowing this and knowing that it could not itself obtain authorized insurance, it was its duty to so advise Kline and to afford him an opportunity to attempt to secure authorized insurance. Had Globe or Patterson done this and then been instructed by Kline to place the insurance through a surplus line broker, probably there would have been no liability in Globe merely as a result of the fact that the broker properly licensed to place surplus line insurance had placed it in a company financially unsound.
We do not for a moment suggest that where a mortgage holder is authorized to place insurance for the benefit of the owner, as well as for its own protection, it must itself investigate the solvency of an insurer qualified to do business in the State in which the insurance is placed, nor have we any doubt that where the mortgage holder finds himself unable to place such insurance in an authorized company, it may employ surplus line brokers to do so with the knowledge of the owner of the property. And we feel certain that when it does so, if the broker places the insurance in a company which proves to be unsound, though the broker may be liable, the mortgage holder is not. These, however, are not the facts here. The mortgage holder knew that in several hundred cases it itself had been unable to obtain authorized insurance. Therefore, as already stated, it should have so advised Kline.
Furthermore, we are unfavorably impressed by the fact that there is no doubt that, as the result of the employment of Patterson by Globe Automobile Finance Company for the placing of this and other similar insurance, Globe actually received credit from Patterson at the rate of 20% on each premium paid by Globe to Patterson. It may be that Globe made each of its customers for insurance a charge which was reduced by the result of this practice. The record does not convince us that this is true, but if it is true, each customer should have been told of the practice and made to understand that, as a result of it, his insurance was being placed through a surplus line broker in an unauthorized company. He could then have determined whether he wanted that kind of insurance or whether he preferred to pay the slightly higher premium and obtain insurance in a locally licensed company.
As a result of these facts we have no doubt at all that Patterson, his surety, and Globe Automobile Finance Company should be held solidarily liable to Kline for the loss which he sustained.
Since we have concluded that plaintiff should recover the value of his car at the time of the collision, it becomes necessary to determine what that value was. We state frankly that in such a case only *523 a confirmed optimist with a highly exalted opinion of his own ability to determine values could feel certain of the exact value of the car in question. It was a 1950 model Plymouth and had been bought by Kline as a used car on April 11, 1952, for $1,436.85. It was destroyed in the collision on August 25, 1952, which was four and a half months after its purchase.
According to N.A.D.A., which is the official used car guide published by the National Automobile Dealers Used Car Guide Co., in Vol. 19, No. 8, Region "B", dated August, 1952, the ceiling value of such a car, meaning the value of such a car in perfect condition, would be $1,506, and the average retail value would be $1,394.
There is evidence to the effect that such a used car would depreciate at the rate of one and a half per cent per month. Applying that calculation, we find that the value of the car at the time of its destruction would be about $1,325. There is evidence to the effect that the salvage value should have been from $25 to $50 and the witness who gave these figures finally said that he "would say about $35." Other evidence showed a possible salvage value of as much as $145.
Our conclusion is that we would not be justified in changing the value placed upon the car by the District Judge which value was $1,260.
The judgment should have run in favor of plaintiff, Malcolm S. Kline solidarily against defendants, James T. Patterson, Globe Automobile Finance Company, and American Employers Insurance Company for $1,260, with legal interest from judicial demand, until paid, as against the American Employers Insurance Company, however, limited to the sum of $1,500, the amount of its bond.
The amount of the judgment in favor of Globe Automobile Finance Company against Malcolm S. Kline, was, we think, correctly fixed at $632.50.
We have given much thought to the question of whether, under the circumstances, Globe Automobile Finance Company should be allowed to recover conventional interest and attorney's fees from Kline. Our doubt on this question results from the fact that Globe Automobile Finance Company was one of those responsible for the inability of Kline to pay the balance due on the mortgage note.
We cannot sanction the recovery by Globe of attorney's fees. Inasmuch, however, as the judgment in favor of Globe Automobile Finance Company will be payable only out of such amount as may be recovered by Kline and will include legal interest from judicial demand, we feel that Globe Automobile Finance Company should recover interest, not, however, the conventional interest stipulated in the note. As a matter of fact, Globe Automobile Finance Company, in its suit against Malcolm S. Kline, did not pray for interest from the time at which payment became due on the note but prayed for interest only from judicial demand. Since Kline is entitled to recover from the solidary obligors the amount due him with legal interest from judicial demand, we feel that Globe also is entitled to legal interest from judicial demand.
It is therefore ordered adjudged and decreed that the judgment be amended so as to read as follows:
It is ordered, adjudged and decreed that there be judgment in favor of Malcolm S. Kline and against defendants, James T. Patterson, doing business as the Interstate Insurance Agency, and American Employers Insurance Company and Globe Automobile Finance Company in the full sum of $1,260, with legal interest from judicial demand until paid and for all costs; the judgment, however, insofar as it runs against American Employers Insurance Company, to be limited to the sum of $1,500.
It is further ordered, adjudged and decreed that out of the said sum of $1,260 and only out of that sum there shall first *524 be paid to Globe Automobile Finance Company, composed of Thomas D. Harris, Sr., and Harry H. Blanke, the amount of its judgment, $632.50, with legal interest from October 6, 1953, until paid.
Amended and affirmed.