TUCKER, Judge.
The plaintiff has appealed from the judgment of the lower court dismissing its demand against one of the defendants, Phoenix of Hartford Insurance Company, under its surplus line insurance broker’s bond with defendant, Delchamps Insurance Agency, Inc., as the insured in the principal sum of $20,000.00. The subject bond was written and confected in accordance with LSA-R.S. 22:1257, et seq., and particularly under the language of R.S. 22:-1260, as amended by Act No. 146 of the regular legislative session of 1960, which in part is quoted as follows:
“(3) Prior to the issuance of a license the applicant shall file with the commissioner of insurance, and thereafter for as long as the license remains in effect he shall keep in force, a bond in favor of the state of Louisiana in the penal sum of twenty thousand dollars, with authorized corporation sureties approved by the- commissioner of insurance, conditioned that he will conduct business under the license in accordance with the provisions of this Part, and that he will promptly remit the tax provided by R. S. 22:1265.. No such bond shall be terminated unless not less than thirty days prior written notice thereof is filed with the commissioner of insurance. As amended Acts 1960, No. 146, § 1.”
The record reflects that the plaintiff had been victimized by the default of a subcontractor, namely, D & M Mechanical Contractors, Inc., and investigation revealed that Commonwealth Marine, the surplus line insurer on D & M’s performance bond, was defunct and insolvent. Judgment was rendered by the trial court against the defendant, Delchamps Insurance Agency, Inc., in the sum of $64,287.-80 with five percent interest from judicial demand until paid and all costs.
In this appeal the plaintiff maintains Phoenix’s bond covers its loss to the extent of the bond’s principal sum of $20,-000. Liability is based on the primary contention that Delchamps was required by statute to ascertain the financial condition of Commonwealth, an unauthorized insurer, before placing insurance therewith and had failed to comply with said statutory duty, thereby causing plaintiff’s loss. The plaintiff cites Kline v. Globe Automobile Finance Co., 100 So.2d 517 (La. App.Orl.1958), Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La.App. 3rd Cir. 1970), and Duchamp v. Nicholson, 2 Mart.(N.S.) 672 (1874), in support of this position. In effect plaintiff urges that a failure to hold Phoenix liable to plaintiff in the principal sum of its bond would result in rendering nugatory that portion of the subject statute which requires a surplus line broker to determine the financial condition of an insurer, unauthorized to do business in the State of Louisiana, before placing surplus line coverage.[1] Plaintiff claims that the Phoenix bond *596 covers its loss, resulting from the failure of Delchamps, the broker, to determine the financial plight of Commonwealth before writing the performance bond with that company.
As against plaintiff’s position Phoenix contends that the rule of strict construction applies in Louisiana to the interpretation of a contract of suretyship, and that, since the subject bond did not name particularly or by class the plaintiff as a beneficiary under the bond, the plaintiff is without legal right to assert itself as a beneficiary under the Phoenix bond.
Therefore, the sole issue presented here is whether or not the plaintiff is a beneficiary under the surplus line broker’s bond executed by Phoenix and entitled to recover from Phoenix the amount of its loss to the extent of the bond coverage in the sum of $20,000.
Neither the Kline case, supra, nor the Bordelon case, supra, relied on by plaintiff is controlling. While the Kline case is factually in point, it is nevertheless distinguishable in that the issues raised in the instant case were not even considered in Kline. In this cited authority both the broker and the surety on his surplus line bond, required under the applicable statute, were held liable upon a showing that the broker failed to discharge the burden incumbent on him of ascertaining the financial condition of the surplus line insurer. However, the applicability of the bond required by LSA-R.S. 22:1257, et seq., and particularly Section 1262 as to an insured of the surplus line broker, was not even considered by the Court, as the issue was never raised by the litigants. While we do not question the correctness of the decision under the circumstances, we do decline to accept Kline as authority for the proposition that the insurance broker’s bond in favor of the State of Louisiana also runs in favor of a policyholder of such surplus line insurer.
The Bordelon case is also factually similar to the case at hand but distinguishable in one material aspect, namely, that the insurer of the surplus line broker was not made a party to the action and no judgment could have been rendered against it. Pendleton, the insurance broker sued in Bordelon, had undertaken to procure insurance for the plaintiff and had placed the insurance in an insolvent or nonexistent insurance company. Pendleton had further led the insured to believe he was covered. In determining the liability of Pendleton to the insured, the Court remarked :
“ . . . .In their dealings with Pendleton, Bordelon and Alexandria Underwriters had the right to assume that they would be protected by the bond which the surplus line broker is required to file with the Insurance Commissioner, and Pendleton allowed the insured to believe that he had that security. Under these facts, we feel that Pendleton is personally liable for the loss sustained by the insured under the Reliance policy.” (Bordelon v. Herculean Risks, Inc., 241 So.2d 766, 772)
Thus, the above quoted language is clearly dicta insofar as it attempted to adjudge Bordelon’s rights against the surety on the broker’s bond because the surety was not a party to the action. The cited language can only be authority for the proposition that the representation made by the broker Pendleton that Bordelon was protected by Pendleton’s bond was only one of several fraudulent misrepresentations which made Pendleton personally liable to plaintiff.
To further support its position, appellant also relies upon Duchamp v. Nicholson, supra. There plaintiff sued on a statutory auctioneer’s bond, and the Court held that although plaintiff was not specifically designated as an obligee in the bond, *597 nevertheless, the bond contained language tantamount to an implied stipulation pour autrui. On this premise plaintiff was deemed to be covered by the bond and entitled to sue thereon. The salient difference between the Duchamp case and the instant matter is that even though in both cases the public authorities are the only named obligees in the bond, in the Ditchamp case the bond in question contained language to show that it was given to protect all those occupying the same class as the plaintiff, that is, employers of the auctioneer, and in the instant case the only language of the bond that could be relied upon as indicating a benefit was intended plaintiff is that which requires the broker to conduct his business in accordance with the provisions of law.
Duchamp, above, was favorably commented upon by Professor J. Denson Smith in an article appearing in the Tulane Law Review,* page 35. The commentator notes the significance of Duchamp to be the Court’s holding that there need be no express or direct promise in favor of the beneficiary of a stipulation pour autrui where the circumstances justify the conclusion that the contract contemplated it should run in favor of the party plaintiff.
Professor Smith’s article, above, was made the basis for the opinion rendered by the Supreme Court in Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So. 2d 347 (1969). This suit involved a claim by a surface lessee against a mineral lessee for damages to crops, pursuant to a provision in the mineral lease which stated, “The Lessee shall be responsible for all damages caused by Lessee’s operations.”
After concluding that stipulations pour autrui are favored under our law, the Court in Andrepont, supra, stated:
“Professor J. Denson Smith, in a study of the history, legislation and jurisprudence which have formed the doctrine of stipulations in favor of third persons in this State, has enumerated the factors to be considered in deciding whether an advantage for a third person has been provided by contract between others. They are:
‘(1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge; (2) the existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee (sic) will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended. See Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 58 (1936).’” Andrepont v. Acadia Drilling Co., 231 So.2d 347, 350, 351.
The Court in Andrepont then proceeded to find the existence of an obligation by lessor to the surface lessee pursuant to LSA-C.C. Article 269[2] and LSA-R.S. *598 9:3203.[3] On these considerations the Court found that the requirements for finding a stipulation pour autrui existed with respect to the surface lessee and held the mineral lessee liable to the surface lessee for the crop damage sustained.
Referring to the foregoing factors discussed by Professor Smith and approved by the Supreme Court in Andrepont in considering whether an advantage for a third person has been provided by contract between others, we will consider their applicability to the facts of the case at hand.
Factor (1) is clearly inapplicable because there is no legal relationship in this case between the State (promisee on the bond) and plaintiff (third person) involving an obligation owed by the State to plaintiff and which would be discharged upon the surety performing under the bond. Under no circumstances could the State, the promisee, be liable to plaintiff, in this instance. We also fail to see any relationship between plaintiff and the State wherein the State could incur future liability to plaintiff under the circumstances of (2), (a), or whereby including plaintiff as a beneficiary would materially benefit the State in a material way under the circumstances of (2), (b). Any benefit flowing to the State would be most indirect and so uncertain as to preclude its being considered material.
We believe that if present plaintiff is to qualify as coming within the purview of a stipulation pour autrui, it must be upon the basis of factor (2), (c), where “there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.” (Emphasis supplied.)
We note, however, the latest Supreme Court pronouncement on the subject seems somewhat in contradiction of Professor Smith’s heretofore mentioned article. We refer to Fontenot v. Marquette Casualty Co., 258 La. 671, 247 So.2d 572, which was an action by an injured plaintiff against the re-insurer of the tort-feasor’s insolvent liability insurer. In Fontenot, above, the Supreme Court expressly held that the stipulation pour autrui must be in writing and clearly express the intent to benefit persons not parties to the contract. In so concluding, the Supreme Court relied upon La.Civ.Code Arts. 1890 and 1892.
It appears to us that on the basis of this latest treatment of the doctrine of stipulation pour autrui, the Supreme Court at least requires that where circumstances rather than the language of the contract is relied upon, such circumstances must leave no doubt but that, a stipulation pour autrui was intended.
In this instance, we note that the terms of the bond virtually track the language of the statute pursuant to which it was given. Pertinently the bond recites that Delchamps and Phoenix are:
" . . . are held firmly bound unto the State of Louisiana in the full sum of Twenty Thousand Dollars ($20,000.-00) current money of the United States of America, which we promise to pay to the State of Louisiana, through the duly qualified Commissioner of Insurance ....
The CONDITIONS OF THIS OBLIGATION are such that if the above bounded Delchamps Insurance Agency shall conduct business under his license
*599 as a Surplus Line Broker in accordance with the provisions of Part 27 and the other applicable provisions of Title 22, Revised Statutes of 1950 and promptly remit the taxes provided by Part 27 of Title 22, Revised Statutes of 1950, then in such case the above obligation to be null and void, or else to remain in force and effect.”
We fail to see wherein the language of subject bond clearly expresses the intent to benefit third persons not named therein. Contrarily, the bond expressly recites it is given in favor of the State of Louisiana alone, and also names the State of Louisiana as the only person to whom it is payable. While the bond is conditioned upon the performance by Delchamps of all obligations imposed by the applicable statute, the only party expressly entitled to collect thereon is the State of Louisiana.
To hold as plaintiff urges would likewise raise a most grave issue which is not expressly answered either by the language of the statute or the bond written in pursuance thereof. We refer to the question of whether the bond is intended as a single limits coverage bond rendering the surety liable only in the aggregate of $20,000.00 to all parties entitled to recover thereon, or whether it was meant to cover each claimant to the recited limit of $20,000.00. If the former were intended and present plaintiff recovered the sum of $20,000.00, the amount of the bond would be thus exhausted leaving no basis for recovery by the only expressly named beneficiary, the State of Louisiana. Such, in our opinion, would indeed produce an absurd result. On the other hand, nothing in the language of either the statute or bond even remotely suggests that the surety intended to assume liability for a total of $20,000.00 on each individual claim presented by Delchamps’ policy holders. Such a construction would render the surety’s exposure incalculable. In the absence of language clearly expressing such intent, we are most reluctant to impose liability of this nature upon a surety.
The judgment of the trial court rejecting plaintiff’s demand against Phoenix of Hartford Insurance Company is affirmed; all costs of this appeal to be paid by plaintiff-appellant, J. M. Brown Construction Company, Inc.
Affirmed.

. R.S. 22:1262 reads, in part, as follows:
“A surplus line broker shall not knowingly place surplus line insurance with insurers unsound financially. The broker shall ascertain the financial condition of the unauthorized insurer before placing insurance therewith ■. . . .”

 Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui. J. Denson Smith, Professor of Law, Louisiana State University, 11 Tulane Law Review, pp. 18, 35.

. Article 2692 of the Civil Code, in part, reads as follows:
“The lessor is bound from the very nature of the contract, and without any clause to that effect:

“3. To cause the lessee to be in a peaceable possession of the thing during the continuance of the lease.”

. Section 3203 of Title 9 of the Revised Statutes imposes an obligation upon the lessor in favor of the lessee as follows:
“Any lessor of property to be cultivated who fails to permit the lessee to occupy or cultivate the property leased, is liable to the lessee in an amount equal to tlie market value of the average crop that could have been grown on the land or on like land located in the immediate vicinity.”