295 So.2d 231 (1974)
Essie S. FRANK, Plaintiff-Appellee,
v.
UNITED COMPANIES MORTGAGE & INVESTMENT, INC., Defendant-Appellant.
No. 4538.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1974.
*232 Kizer & Mosley by Roland C. Kizer, Jr., Baton Rouge, for defendant-appellant.
Maurice L. Tynes, Lake Charles, for plaintiff-appellee.
Before CULPEPPER, MILLER and WATSON, JJ.
MILLER, Judge.
Defendant United Companies Mortgage & Investment, Inc. appeals from a judgment granting plaintiff Essie S. Frank a permanent injunction preventing the sale via executory process of property belonging to her. The trial court held that United contracted to but failed to provide credit life insurance on the co-mortgagor, Mrs. Frank's husband. We affirm.
On July 7, 1967, Jack Frank and his wife Essie mortgaged their St. Landry Parish real property for the sum of $14,132.20. United holds the note which has a principal balance of $7,288.33. The mortgage contains the following provision:
In order to more fully protect the security of this mortgage, the Mortgagor, together with and in addition to the monthly payments under the terms of the notes secured hereby, on the first day of each month, until the said note is fully paid, will pay to mortgagee:
(a) The sum equal to Six and 90/100__
 ______________________ ( $6.90 )
Dollars as an escrow deposit for premiums due or to become due on fire and life insurance policies covering the mortgaged property or Mortgagor, such sums *233 to be held by mortgagee in trust to pay said premiums.
(b) The aggregate of the amounts payable pursuant to sub-paragraph (a) and those payable on the note secured hereby, shall be paid in a single payment each month to be applied to the
1. Fire and life insurance premiums.
2. Interest on the indebtedness secured hereby.
3. Amortization of the principal of said indebtedness.
Any deficiency in the amount of such aggregate monthly payment shall, unless made good by the mortgagor prior to the due date of the next such payment, constitute an event of default under this mortgage.
The term "Mortgagor" is designated by the contract to include both Jack and Essie Frank. Credit life insurance was obtained, but only on Essie Frank. Jack Frank died in March of 1972. Mrs. Frank made three payments after his death, then defaulted. United filed for executory process on December 21, 1972. On April 19, 1973, Mrs. Frank applied for a temporary restraining order and a permanent injunction to arrest the seizure and sale of her property. The substantive basis for her petition was the extinguishment of the mortgage note obligation due to United's failure to fulfill its agreement and representations regarding the acquisition of credit life insurance. Counsel stipulated that the outcome of the hearing on the rule for a preliminary injunction would determine the merits in regard to issuance of a permanent injunction. The trial judge ruled for Mrs. Frank, and ordered a permanent injunction prohibiting the sale. The trial judge assigned the following relevant reasons:
1. All dealings with reference to Credit Life were under the control and supervision and direction of United. A fair interpretation of the mortgage and testimony not only proves this, but the mortgage shows that United was under obligation to collect and pay same. For all intents and purposes, United was the agent for the Franks to procure and pay for Credit Life Insurance. It was, specifically, by the terms of the mortgage, designated the "Trustee for Mortgagor", the latter being husband and wife.
2. United did not fulfill its obligation.
3. Mr. and Mrs. Frank were sent to Attorney Ledet for papers and closing. He discussed Credit Life with Mortgagors.
4. Mr. and Mrs. Frank were told both would have credit life.
5. Both signed applications.
6. United recognized its obligation and says it attempted to secure Credit Life, but failed to do so, claiming that the insurance company "policy" was that Mr. Frank was too old, so they simply put the insurance on Mrs. Frank.
The conclusion of this Court is that United obligated itself to get credit life on Mr. & Mrs. Frank; the mortgage provided for United to collect the money from Mr. & Mrs. Frank as "Trustee" and to pay the premiums. It simply tried its own "affiliated" Insurance Company (see testimony of Mr. Huval) and stopped there.
It had an obligation to fulfill. It failed to fulfill it. (Tr. 30, 1)
United attempts to minimize the importance of the mortgage provision relating to premiums and acquisition of credit life insurance. It asserts that Mr. and Mrs. Frank had entered previous lending agreements without acquiring credit life insurance. It also contends that to require United to comply with the disputed provision would be unduly burdensome. It *234 argues that a $6.90 per month total premium for both fire and credit life insurance is outrageously low. It further alleges that Mrs. Frank could not read and that the provisions in the mortgage could not confuse her. United also argues that it is absurd for it to be required to procure insurance on the life of someone, regardless of their age or physical condition.
These arguments are rejected. The evidence does not supported United's allegation that other credit transactions had been entered without benefit of credit life insurance. Even if proved, we fail to see the relevance when the mortgage expressly requires United to provide credit life insurance.
United is the one which quoted the $6.90 fee for both fire and credit life insurance. One of United's officers testified that it was company policy to use the stated premium in the mortgage to acquire fire insurance only; that the credit life premium came from their interest receipts; and that if the main creditor (in this case Mr. Frank) was disqualified and was deemed uninsurable, the policy would be placed upon another member of creditor's household. This may be United's understanding, but the terms of its contract do not support this arrangement.
The argument that Mrs. Frank was unable to read and could not understand the terms of the agreement is not persuasive. As we understand the argument, United contends that one cannot claim the benefit of what he cannot understand. The law of obligations of this nature being one of commutative rights and liabilities, such a generality would not be without its commutative counterpart. See LSA-C.C. arts. 1768, 1770. We note that executory process had been utilized in the foreclosure on the Frank's property. No mention is made in the record concerning Mrs. Frank's expertise and understanding of the acceleration and confession of judgment clauses. Whether or not the Franks fully understood the terms of the agreement at the time they signed it, we must presume United was aware at that time and later that it was obliged to fulfill its stated obligations.
United also complains that it would be burdensome for it to be required to provide credit life insurance on anyone, regardless of age or physical condition. United makes much of the fact that Mr. Frank would have been too old at maturity to acquire credit life insurance. A United representative testified that the insurance company would not insure one who would be over 65 at maturity of the note. Again, if this is United's policy, all it need have done was to follow it. It was free to ask Frank's age before entering the agreement. If it still wished to enter the agreement but avoid the obligation to acquire credit life insurance, it would have reworded its contract.
United makes the legal argument that acquisition of credit life insurance was not the principal cause for the contract; since it was not the principal cause, it cannot serve as a basis to vitiate the contract. LSA-C.C. art. 1823; Ouachita Air Conditioning, Inc. v. Pierce, 270 So.2d 595 (La.App. 2 Cir. 1972). These authorities deal with vitiation of contracts due to error of fact. It is only in dealing with questions of error of fact that the principal cause or motive for the contract becomes relevant and determinative. The determination of the problems inherent in this case is based upon the terms of the contract and the articles of the Civil Code on the Effect of Obligations, LSA-C.C. art. 1901 et seq. The Franks agreed to pay a stated premium for fire and credit life insurance on both Mr. and Mrs. Frank. The Franks agreed to pay $6.90 monthly as a deposit for premiums. United undertook to use these premiums for acquisition of fire and credit life insurance for the "Mortgagor," which specifically included both Mr. and Mrs. Frank. Credit life insurance was provided for Mrs. Frank. After consultation *235 with only one insurer, its own affiliate, United did no more to acquire insurance for Mr. Frank. No rebate of a portion of the $6.90 was offered or made. As noted, regardless of the onerous or burdensome terms of the agreement, United undertook to enter the contract. Agreements legally entered have the effect of law, and must be performed in good faith. LSA-C.C. art. 1901.
Having determined that United breached its obligation, we now ascertain damages. United was obligated to acquire credit life insurance on Mr. and Mrs. Frank, but did not provide coverage on Mr. Frank. The measure of damages is found in LSA-C.C. art. 1934(1) as being those damages that may have been reasonably contemplated. The purpose of credit life insurance is to pay the remaining balance due upon death of the insured debtor. The measure of damages is that amount which Mrs. Frank suffered through United's failure to acquire credit life insurance on her husband. The obligation of Mrs. Frank to pay the remaining balance is thus extinguished by compensation. Compensation takes place by operation of law when two persons are indebted to each other by two debts which are equally liquidated and demandable. LSA-C.C. arts. 2207-2216. Compensation is one of the means recognized for extinguishing obligations. LSA-C.C. art. 2130.
The trial judge relied upon Citizens Finance Company of Amite v. Buchanan, 261 La. 1022, 261 So.2d 652 (1972), and Kline v. Globe Automobile Finance Company, 100 So.2d 517 (La.App.Orl.1958). United seeks to distinguish these cases. Even if the cases are distinguished, the express terms of the mortgage remain. The trial judge's interpretation of the provisions relating to credit life insurance is eminently correct.
The trial court judgment is affirmed at appellant's costs.
Affirmed.