This case involves the alleged failure of an insurance agent to procure insurance with a solvent company.
Plaintiff Chester F. Raines Agency, Inc., hereinafter referred to as "Raines," filed a complaint against Miles Carl Dutton, Charles Dutton, Nelson Gary, and Janet Gary, claiming on an account for insurance premiums. Janet Gary was dismissed as a defendant. Judgment by agreement was rendered against the other defendants for $59,252.77.
Meanwhile, defendants filed a counterclaim. They amended the counterclaim several times, striking all counterclaimants except Miles Carl Dutton and adding additional counts, so that as last amended, the counterclaim consists of five counts.
Court Four is the only count which involves the issue raised on this appeal, and will be the only one discussed in this opinion. In Count Four Dutton alleged that during 1981 and 1982 Raines was engaged in the business of being an insurance agent, and that Dutton at that time was engaged in the trucking business and was in need of insurance on various truck-tractors and trailers and engaged Raines to procure the insurance. Dutton alleged that Raines accepted this engagement and caused the insurance to be placed with Amherst Insurance Company, which was a "surplus line carrier" and was not authorized to transact insurance business in the State of Alabama. Raines placed the insurance with Amherst, according to Dutton, for the purpose of securing the advantage of getting a lower premium rate than one which would be accepted by an authorized insurer. Dutton claims that this was contrary to the obligations and duties of Raines as an insurance agent under the laws of the State of Alabama. *Page 547 
Dutton further alleged that while the policy with Amherst was in force and effect, he experienced a loss on one of the insured vehicles; that the company failed to pay for said loss because the company was in bad financial condition or receivership; and that Dutton experienced great loss, expense, and damage as a result. He claimed damages in the amount of $50,000.00, plus interest and costs.
The facts, as found by the trial court, are as follows:
 "Mr. James Breland (hereafter "Breland") as agent for [Raines], negotiated with Dutton concerning the obtaining of insurance coverage for Dutton's rolling stock; that Dutton had received a price for insurance from one Gene Rabun, and Breland was attempting to compete with that price; that price was of primary consideration in the negotiations; that Breland attempted to procure coverage from approximately five agencies and received a quote from only one whose rates compared favorably with that quoted by Rabun; Amherst, the insurer whose rates were given, was not authorized to transact insurance business in Alabama except as to surplus line coverages. (Section 27-3-2 CODE OF ALABAMA); that Breland did not determine or investigate the financial soundness of Amherst and placed the business through a surplus line broker who obtained the coverage from Amherst; that the coverage term was from December 14, 1981, to December 14, 1982; that Dutton paid the required premium by way of making a partial payment and financing the balance; . . . that Dutton experienced a loss on June 22, 1982, incurred various expenses in recovery and repairing his property and filed appropriate proofs of loss; that the eligibility or solvency of Amherst was not questioned by Alabama's commissioner of insurance until receipt of the notice of suspension on October 1, 1982; that Dutton's claim of loss has not been paid."
The trial court, sitting as the trier of fact, rendered a judgment in favor of Raines, and Dutton appeals here. We affirm.
Dutton limits his appeal to Count Four of his counterclaim. Count Four provides, as follows:
 "Defendants and Counter-Plaintiffs aver that at the time the insurance was placed with Amherst Insurance Company it was what is known as a `surplus line carrier' and was not authorized to transact insurance business in the State of Alabama and that defendant Raines placed said insurance with said company for the purpose of securing advantages as to a lower premium rate than one which would be accepted by an authorized insurer, contrary to the obligations and duties of Raines as an insurance agent under the laws of the State of Alabama."
Dutton argues that because the trial judge did not specifically address, in his findings, the allegations of Count Four, he misapplied the law to the facts. We decline to accept this argument.
The law in Alabama is that when there is an absence of specific findings of fact by the trial court, this Court will assume that the trial court made those findings necessary to support the judgment, unless those findings would be clearly erroneous and against the great weight and preponderance of the evidence. Barrett v. Odom, May DeBuys, 453 So.2d 729 (Ala. 1984). While the trial court may not have specifically addressed Count Four, the court necessarily rejected that claim by rendering a judgment in favor of Raines.
Dutton claims the court erred in finding for Raines.
To establish Raines's liability, Dutton relies on Code 1975, §§ 27-10-1 and 27-10-2. Section 27-10-1 provides, in part:
 "(a) No person shall in this state, directly or indirectly, act as agent for, or otherwise represent or aid on behalf of another, any insurer not then authorized to transact such insurance in this state in *Page 548 
the solicitation, negotiation or effectuation of insurance. . . ."
Section 27-10-2 (a) provides:
 "(a) Any person who in this state willfully represents or aids an unauthorized insurer in violation of section 27-10-1 shall, in addition to any other applicable penalty, be liable for the full amount of any loss sustained by the insured under any such contract and for the amount of any premium taxes which may be payable under section 27-10-35 by reason of such contract."
Dutton argues that § 27-10-1 and 27-10-2 "place upon an agent an absolute liability for 100% of the loss any insured sustains under a policy which that agent writes with a company who is not authorized to do business in the state of Alabama."
Dutton acknowledges that Raines might be exempt pursuant to §27-10-1 (b), which provides:
"This section shall not apply to:
"* * *
 "(2) Surplus lines insurance or coverage specified in section 27-10-34 and other transactions as to which a certificate of authority is not required of an insurer. . . ."
Nevertheless, Dutton contends that Raines procured the surplus line insurance in violation of § 27-10-20, and by doing so removed itself from the surplus line exception of § 27-10-1
(b)(2).
Section 27-10-20 provides, as follows:
 "If certain insurance coverages cannot be procured on terms acceptable to the insureds from authorized insurers, such coverages, designated `surplus lines,' may be procured from unauthorized insurers subject to the terms and conditions of either subdivisions (1) or (2) of this section:
 "(1) a. The insurance must be procured through a licensed surplus line broker;
 "b. The full amount of insurance required must not be procurable, after diligent effort has been made to do so, from among the insurers authorized to transact and actually transacting that kind and class of insurance in this state or has been procured to the full extent such insurers are willing to insure;
 "c. The insurance must not be procured for the purpose of securing advantages as to a lower premium rate than would be accepted by an authorized insurer; . . . ."
(Emphasis added.)
Dutton argues that § 27-10-1 and § 27-10-2 placed upon Raines, the agent, absolute liability for the loss, because Raines should not have participated "in any way in the procuring of surplus line insurance solely for the reason of price." Dutton claims that the statute imposed upon Raines a duty to protect "Dutton and others like him from themselves."
Presented, as we are, with these claims, we must construe legislative intent insofar as that intent is expressed in the statutes dealing with surplus insurance.
We find that the trial court did not err in holding that the duty of complying with § 27-10-20 was upon a licensed surplus line broker in this case. Once the insurance agent, Raines,with the consent of Dutton, authorized the surplus line broker to procure the surplus line coverage, and Raines authorized the surplus line broker to issue the policy, the court was authorized to find that no other statutory duties were placed on Raines.
Construing the exemption statute, § 27-10-1 (b)(2), with the statute placing a duty on the surplus line broker, § 27-10-20
we believe the construction placed on similar statutes by our sister state of Louisiana is uniquely applicable.
In Kline v. Globe Automobile Finance Co., 100 So.2d 517, 522
(La. 1958), the court discussed the surplus line broker's duty to comply with Louisiana's similar statute:
 "There is no doubt of the necessity and legality of resorting to surplus line insurance on certain occasions. Where this is necessary, a surplus line broker no doubt serves a very useful purpose. However, *Page 549 when it becomes necessary that insurance be so placed with an insurer not authorized to do business locally, it is of paramount importance that the broker comply strictly with the requirements of the surplus line statute so that there may thus be substituted by the broker's investigation and the broker's compliance with the requirements the security which would otherwise be provided where the insurance is placed in a locally authorized company which has provided the security which is required of such locally licensed companies." (Emphasis supplied.)
In Kline, the Louisiana court placed upon the broker, and not the agent, the duty of complying with the surplus line statute.
In Bordelon v. Herculean Risks, Inc., 241 So.2d 766 (La. 1970), plaintiffs sought to recover against the individual surplus line broker, the corporate surplus line broker, and the insurance agency. Plaintiff had contacted an insurance agent with Alexandria Insurance Underwriters for the purpose of obtaining a fire insurance policy. The agent was unable to provide the requested insurance coverage through a regularly admitted company and he did not have a license to write surplus line insurance. Thus, the agent contacted a surplus line broker, who informed the agent that he could handle the coverage. A policy was issued by the surplus line broker. Thereafter, a loss was incurred, and it was determined that the insurance company was insolvent. In the plaintiff's suit to recover, the trial court found in favor of Alexandria Insurance Underwriters, but found against the surplus line brokers.
Here, the trial court did not err in finding that "[t]he law places the duty of determining the financial soundness of an unauthorized insurance company upon the surplus line broker," because in Alabama, the duty of determining the financial stability of a surplus line insurance carrier is placed upon the surplus line broker and the commissioner of insurance for the state of Alabama. Section 27-10-26 provides as follows:
 "(a) A surplus line broker shall not knowingly place surplus line insurance with an insurer that is unsound financially, or that is ineligible under this section. The broker shall ascertain the financial condition of the unauthorized insurer before placing insurance therewith.
"(b) The broker shall not so insure:
 "(1) With any insurer which is not an authorized insurer in at least one state of the United States for the kind of insurance involved, and with capital and/or surplus amounting to at least $1,500,000.00; or guaranteed trust fund amounting to at least $750,000.00; or
"* * *
 "(5) In any insurer made ineligible as a surplus line insurer by order of the commissioner received by or known to the broker. The commissioner may issue such an order of ineligibility if he finds that the insurer:
 "a. Does not meet the financial requirements of this section;
 "b. Has without just cause refused to pay valid claims arising under its contracts in this state or has otherwise conducted its affairs in such a manner as to result in injury or loss to the insuring public of this state; or
 "(c) Has conducted its affairs in such a manner as to result in the avoidance of payment of tax as required by section 27-10-31 and 27-10-35."
The statute places on the commissioner the duty to determine the ineligibility of an insurer to issue surplus line insurance coverage.
Based on the foregoing, we must conclude that the trial court properly applied the law and did not err in finding that the procuring agent was not liable.
The judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and BEATTY, JJ., concur. *Page 550