705 So.2d 1267 (1998)
POPICH BROS. WATER TRANSPORT, INC.
v.
GULF COAST MARINE, INC., et al.
No. 97-CA-0902.
Court of Appeal of Louisiana, Fourth Circuit.
January 14, 1998.
Peter B. Sloss, James M. Jacobs, Murphy, Rogers & Sloss, New Orleans, for Plaintiff/Appellee Popich Bros. Water Transport, Inc.
Robert C. Clotworthy, David A. Abramson, Phelps Dunbar, L.L.P., New Orleans, for Defendants/Appellants Gulf Coast Marine, Inc., Dieter M. Hugel and Alvin Pike.
Kevin L. Cole, John I. Goodwin, III, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, New Orleans, for Amicus Curiae Louisiana Surplus Line Association.
Before BYRNES, ARMSTRONG and LANDRIEU, JJ.
*1268 ARMSTRONG, Judge.
This case is a suit against insurance brokers. The plaintiff is a crewboat company which obtained liability insurance through the defendant brokers. The defendant brokers obtained liability insurance coverage for the plaintiff from an English insurance company. After some months, the insurance company, because of financial distress, was placed into some sort of liquidation proceeding in England and stopped paying claims. The result was that the plaintiff did not have full liability insurance coverage for certain claims and expenses and, as a consequence, suffered financial losses. The crux of the plaintiff's theory of liability is that the defendant brokers, at the time they obtained the insurance coverage for the plaintiff, should have known that the insurance company was financially unsound. Put another way, the plaintiff alleges that the defendant brokers negligently failed to investigate the financial soundness of the insurance company before obtaining plaintiff's insurance coverage from that company.
The trial court agreed with the plaintiff and rendered judgment against the defendant brokers. However, we believe that, due to a certain amendment to the statute governing brokers obtaining policies from insurers of the type involved in this case, the defendants in this case cannot, as a matter of law, be held liable. Under the facts as found by the trial court (the dispositive facts essentially are undisputed), the defendant brokers met the duty of care specified by the statute as amended and, as a matter of law, they are not subject to any further duty of care. We are not at liberty to rewrite the statute, much less to judicially repeal the amendment to the statute, and, therefore, we must reverse the judgment of the trial court.
The plaintiff, Popich Brothers Water Transport, Inc. ("Popich"), operates crewboats serving the offshore oil and gas industry. For many years, Popich obtained its insurance coverage through defendant Gulf Coast Marine, Inc. ("Gulf Coast") which is an insurance broker. Defendants Alvin Pike and Dieter M. Hugel are the principals of Gulf Coast. Popich became concerned about the fact that the premium on its insurance (specifically, Popich's "protection and indemnity" insurance) was adjustable, subject to increases based upon Popich's claims/loss experience, and so Gulf Coast recommended switching to a fixed-premium policy. This switch was accomplished by Gulf Coast obtaining a new policy in the London insurance market and cancelling the existing policy.[1]
The new policy was quoted by London United Marine Agencies but was actually underwritten by two English insurers, Walbrook Insurance Company, Ltd. ("Walbrook") and Anglo American Insurance Company, Ltd. ("Anglo American"). Walbrook underwrote 55% of the policy and Anglo American underwrote the other 45%. Thus, Popich was obtaining 55% of its coverage from Walbrook and 45% from Anglo American. It was Walbrook that, because of financial distress, was placed into some sort of liquidation proceeding in England and stopped paying claims. Consequently, Popich lost 55% of the liability insurance coverage for which it had contracted. Anglo American paid only 45% of the covered claims.
A most important aspect of this appeal is the status, under Louisiana law, of the insurers, Walbrook and Anglo American, which underwrote the policy in this case. Most insurance purchased by Louisiana insureds is purchased from insurers which are "admitted" in Louisiana as "authorized" insurers. Such insurers are subject to extensive Louisiana statutory and regulatory requirements. However, sometimes an insured may not be able to obtain needed coverage from an admitted, authorized insurer. Coverages which cannot be obtained from admitted authorized insurers are referred to as "surplus lines" *1269 and may be obtained from non-admitted unauthorized insurers. See La. R.S. 22:1257; August v. British International Ins. Co., 201 So.2d 194, 198 (La.App. 4th Cir.1967); Kline v. Globe Automobile Finance Co., 100 So.2d 517, 521 (La.App.Orl.1958); Scarborough v. Nelson, 371 So.2d 1261, 1266 (La.App. 3rd Cir.1979); Bordelon v. Herculean Risks, Inc., 241 So.2d 766, 769 (La.App. 3rd Cir. 1970). Such surplus lines insurance must be obtained through a licensed surplus lines broker. Id. Walbrook and Anglo American were not admitted in Louisiana and Gulf Coast was a surplus lines broker. Surplus lines insurance, and surplus lines brokers, are subject to specific statutory provisions the most important of which, for present purposes, are La. R.S. 22:1262 and La. R.S. 22:1262.1. The statutory provisions as to surplus lines insurance have been subject to legislative amendments, as [d]iscussed immediately below, and those amendments are crucial to the disposition of this appeal.
La. R.S. 22:1262, as originally enacted as part of the Insurance Code in 1948 (under a different section number), and as reenacted in 1958, stated in relevant part:
A surplus lines broker shall not knowingly place surplus line insurance with insurers unsound financially. The broker shall ascertain the financial condition of the unauthorized insurer before placing insurance therewith.

1948 Acts No. 195, 1958 Acts No. 125 (emphasis added). The emphasized sentence in the above-quoted passage of La. R.S. 22:1262 created a duty of a surplus lines broker to investigate a non-admitted insurer before placing insurance with that insurer. Kline v. Globe Automobile Finance Co., 100 So.2d 517, 521-22 (La.App.Orl.1958). This same statutory section also established certain capital and surplus requirements that a non-admitted insurer had to meet in order for a surplus lines broker to lawfully place insurance with that insurer.[2]
In 1966, an amendment to La. R.S. 22:1262 deleted the sentence of that section which created the duty of surplus lines brokers to investigate non-admitted insurers. 1966 Acts No. 175. The deletion of that sentence from the statute is extremely important because it was that sentence upon which was based the liability of a surplus lines broker for failure to ascertain the financial condition of a non-admitted insurer. See Kline, 100 So.2d at 521. The 1966 amendment did not delete the requirements as to capital and surplus of a non-admitted insurer, but those capital and surplus requirements are not directly relevant to the present appeal.
In 1985, La. R.S. 22:1262.1 was enacted. Under this new statutory section, a surplus lines broker may not place insurance with a non-admitted insurer unless that insurer appears on a list of approved, non-admitted insurers (known as the "White List") maintained by the Louisiana Commissioner of Insurance. In order to be placed and maintained upon the Commissioner's White List, a non-admitted insurer must be approved by the National Association of Insurance Commissioners, must meet the capital and surplus requirements of La. R.S. 22:1262, and must satisfy some other requirements. See R.S. 22:1262.1.[3]
The events in question in the present case, Gulf Coast's obtaining coverage for Popich from Walbrook and Anglo American, took place in 1989. Thus, Gulf Coast was subject to the provisions of La. R.S. 22:1262 as amended in 1966 and to the provisions of La. *1270 R.S. 22:1262.1. It is undisputed that Walbrook and Anglo American were on the White List, that Gulf Coast checked the White List to be sure that Walbrook and Anglo American were listed, that Gulf Coast did not know that Walbrook was unsound financially, and that Gulf Coast did nothing other than check the White List to investigate the financial soundness of Walbrook. The trial court found as a matter of fact that, if Gulf Coast had investigated Walbrook, then Gulf Coast would have discovered that Walbrook was unsound financially. The trial court found that there were articles in the London press which would have put Gulf Coast on notice of Walbrook's financial unsoundness but that Gulf Coast, by its own admission, did not subscribe to any London newspapers or other periodicals, such as Lloyd's List, which might contain information about London insurers. For purposes of this appeal, we will assume that these findings of fact of the trial court are correct or, at least, not clearly wrong or manifestly erroneous.
The decisive issue in this appeal is a legal issue: Did the 1966 amendment to La. R.S. 22:1262 eliminate a surplus lines broker's duty to investigate a non-admitted insurer? Because this is a legal issue, we address it on appeal de novo. E.g., Phoenix Assurance Co. of New York v. Shell Oil Co., 611 So.2d 709, 712 (La.App. 4th Cir.1992). In light of the principles of statutory construction discussed below, we believe that the 1966 amendment did eliminate the surplus lines broker's duty to investigate non-admitted insurers. The surplus lines broker does have a duty to ascertain that the non-admitted insurer is listed on the Commissioner's White List, La. R.S. 22:1262.1, but Gulf Coast did do that in this case. Of course, the surplus lines broker may not "knowingly" place insurance with a financially unsound insurer, La. R.S. 22:1262, but that prohibition, by its own terms, is based upon the surplus lines broker's actual knowledge and not upon what the broker "should have known." It is undisputed in this case that Gulf Coast did not have actual knowledge that Walbrook was unsound financially. In sum, if the surplus lines broker happens to know from some source that a non-admitted insurer is unsound financially, then the broker may not place the coverage with that insurer, but the broker's only duty to investigate is its duty to ascertain that the insurer is on the Commissioner's White List. Cf. Scarborough v. Nelson, 371 So.2d 1261, 1266 (La.App. 3rd Cir.1979) (surplus lines broker met its duty by contacting Louisiana Insurance Commissioner's office as to non-admitted insurer).
As we have discussed above, before 1966, R.S. 22:1262 required surplus lines brokers to investigate non-admitted insurers and the caselaw, Kline, supra, held brokers liable for negligent failure to fulfill that statutory duty, but the 1966 amendment to La. R.S. 22:1262 deleted the statutory language requiring the broker to investigate the insurer. Because the legislature changed the statute, we must recognize that the prior law, as expressed in Kline, supra, has changed.
The legislature is presumed to have enacted a statute in light of the preceding statutes involving the same subject matter and court decisions construing those statutes, and where the new statute is worded differently from the preceding statute, the legislature is presumed to have intended to change the law.
New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans, 94-2223 (La.4/10/95), 653 So.2d 538, 544.
Provisions in an obsolete statute omitted from the more recent legislation cannot be applied. 2A Sutherland, Statutes and Statutory Construction § 51.04 (4th Ed.1984) [Sutherland]. Legislative language will be interpreted on the assumption that the legislature was aware of the existing statutes, the rules of construction, and judicial decisions. If a change occurs in the language, a change was intended in the legislative result. Sutherland at § 45-12.
McGee v. State, 502 So.2d 121, 122 (La.App. 4th Cir.1986), writ denied, 505 So.2d 730 (La.1987).
We are required to give effect to the legislature's 1983 amendment to R.S. 23:1311. When the legislature enacts or amends a statute it is presumed to have considered preceding statutes involving the same subject. *1271 Where a new statute is worded differently from its predecessor, the legislature is presumed to have intended to change the law.
Helmerich & Payne, Inc. v. Stephens, 569 So.2d 21,23 (La.App. 4th Cir.1990).
Where the legislature deliberately amends an act or repeals an act and enacts a new statute changing the provisions of the prior statute by using words conveying a different meaning, the courts are not authorized to ascribe a meaning at variance with the plain import of the language used as that would be exercising legislative functions and would in effect operate as a judicial repeal.
Succession of Thomson, 221 La. 791, 60 So.2d 411, 414 (1952).
"All matter that is omitted in the amended act is considered repealed." Haspel & Davis Milling & Planting Co., Ltd. v. Board of Levee Commissioners of the Orleans Levee District, 95-0233 (La.App. 4th Cir. 9/4/96), 680 So.2d 159, 165, writ denied, 96-2430 (La.12/6/96), 684 So.2d 932. "The legislature is presumed to have acted with deliberation, knowledge of the effect of its acts, and with a purpose in view, and that the provisions of an act were formulated in harmony therewith." State, Through Department of Public Safety and Corrections v. Louisiana Riverboat Gaming Commission and Horseshoe Entertainment, 94-1872, 94-1914 (La.5/22/95), 655 So.2d 292, 301 n. 10.
Under these principles of statutory interpretation, we may not disregard the fact that the legislature, by amendment in 1966, deleted from La. R.S. 22:1262 the requirement that a surplus lines broker investigate a non-admitted insurer. That amendment must be accorded meaning. It must be presumed to have changed the law. The only logical conclusion is that, after 1966, a surplus lines insurer need not investigate a non-admitted insurer and, thus, cannot be held liable for not so investigating. We cannot impose liability for failure to investigate when the legislature deliberately has eliminated the duty to investigate. The caselaw holding a surplus lines broker liable for failure to investigate a non-admitted insurer, Kline, supra, was, in effect, legislatively overruled.
For the foregoing reasons, the judgment of the trial court is reversed and we render judgment dismissing this action.
REVERSED AND RENDERED.
NOTES
[1] The new policy was actually obtained by Gulf Coast through a London broker, Delta Marine & Aviation Insurance Services, Inc. ("Delta Marine"). Delta Marine's exclusive business was obtaining policies in the London Market for Gulf Coast. Defendant Dieter Hugel, who was the president and co-owner of Gulf Coast, owned 50% of Delta Marine. The other 50% of Delta Marine was owned by a London broker, Colburn, French & Kneen, whose employees performed all of the work of Delta Marine as Delta Marine had no employees of its own. However, there is no dispute that it was Gulf Coast that dealt directly with Popich.
[2] In 1960, there were amendments to La. R.S. 22:1262 which amendments allowed an exception to the capital and surplus requirements if a copy of a $500,000 trust agreement was filed with the Commissioner of Insurance, authorized the Commissioner to require a surplus lines broker to obtain financial and other information regarding a non-admitted insurer, and authorized the Commissioner to prevent a surplus lines broker from placing any further insurance with a specified non-admitted insurer. 1960 Acts No. 148. However, the 1960 amendments made no change to La. R.S. 22:1262's requirement that a surplus lines broker investigate non-admitted insurers.
[3] The National Association of Insurance Commissioners ("NAIC") is an organization composed of state insurance commissioners and which performs certain services for them. The NAIC approves a non-admitted insurer only after reviewing financial and other information as to the insurer. The NAIC also reviews the financial and insurance trade press for information as to non-admitted insurers.