CHASEZ, Judge.
On August 1, 1964 Wellington August, a thirty year old male, was injured in an automobile accident at the intersection of North Claiborne Avenue and Elysian Fields Avenue, in the City of New Orleans, when the automobile he was driving was struck in the rear by a truck owned by Supreme Construction Company and driven by one Henry Everfield. Wellington August sued Mr. Everfield and Supreme Construction Company for damages arising out of personal injuries allegedly sustained, and also sued the British International Insurance Company, alleged to have issued a policy of liability insurance insuring Henry Ever-field and Supreme Construction Company for the liability asserted in plaintiff’s petition. The insurance company and the other named defendants answered in an answer filed December 15, 1964. Subsequently American Bankers Insurance Company of Florida intervened, alleging a claim via subrogation in the amount of $183.15, which the intervenor had paid for repairs to Mr. August’s automobile and for which it alleged the original defendants to be liable, and Wellington August filed a supplemental and amending petition alleging property damage in the amount of $50.00. These petitions were answered by counsel for the defendants.
Thereafter, on October 5, 1965 counsel for defendants filed a motion to withdraw as counsel, stating that they had been retained by British International Insurance Company to defend the insurer and the insured, and that British International Insurance Company had represented to mover that in all probability it would not be able to meet its obligations. The present counsel for Supreme Construction Company then moved to become attorney of record for this defendant.
This was followed by a third-party petition filed by Supreme Construction Company alleging that it carried a policy of liability insurance with British International Insurance Company at all times from July 17, 1964 until July 17, 1965; that the insurance company had been placed on notice of the claim and had not indicated that it was going to provide a legal defense as provided by the policy, and should pay attorney’s fees of $2500.00; that the insurance, which was surplus line insurance, was placed at the suggestion and recommendation of Jay Egan of Richardson & Egan, Inc., a Louisiana Corporation, who, on information and belief, failed to determine the financial condition of British International Insurance Company; that the Insurance Commissioner of the State of Louisiana had advised Richardson & Egan, Inc. to cease and desist writing insurance on behalf of said company; and that there were other acts of negligence in failing to warn the petitioner of the unsound condition of the company or in failing to have known of this condition, etc., as of the date of July 17, 1964. It was also alleged that Jay Egan of Richardson & Egan, Inc. had acquired this insurance under the name of Gulf Surplus Brokers which was a nonexistent legal entity not qualified to do business, and had been ordered by the Insurance Commissioner to cease and desist from using this name. It was prayed that British International Company, Richardson &’ Egan, Inc. and Jay Egan be held liable in solido unto the third party-petitioner for any damages for which it may be held lia *197 ble unto Wellington August, together with attorney fees of $2500.00.
Another third-party petition was filed by Supreme Construction Company alleging Richardson & Egan, Inc. to be a licensed surplus line broker, and substantially reiterating earlier allegations, and alleging that a certified copy of a trust agreement evidencing a trust deposit of not less than $500,000 had not been filed pursuant to R.S. 22:1262. This suit brought in Globe Indemnity Company as surety on the statutory bond required of Richardson & Egan, Inc. and asked for judgment up to $20,000.00, the amount of the bond.
These petitions were answered by the third-party defendants and liability was denied.
A motion to consolidate this case with other cases involving similar third-party demands was granted by. the Court, insofar as the third-party demands were concerned.
After a trial was had on the issues of this case, the lower Court, on June 28, 1966, rendered judgment in favor of the plaintiff and against the original defendants in the sum of $3,096.00 with legal interest, and further ordered that the Third-Party Petition of Supreme Construction Company be dismissed.
Supreme Construction Company has appealed from this judgment on the grounds that the Trial Court erred in dismissing the third-party petition, in awarding such a large judgment to the plaintiff, and in refusing to permit an “expert in Louisiana insurance law” to give her opinion of the purposes of R.S. 22:1260 et seq.
Before we reach these questions, however, there is another issue that has been raised in the lower Court and in this Court, namely, whether or not the appeal should be dismissed as not timely filed, insofar as the third-party demand by the Supreme Construction Company is concerned.
The judgment awarding damages to Wellington August and dismissing the petition of the third-party plaintiff was rendered together on June 28, 1966. A motion for a new trial was filed July 7, 1966 complaining of the judgment rendered and signed on June 28, 1966 in that it “is clearly contrary to the law and evidence on the grounds set forth in the accompanying brief annexed hereto and made a part hereof.” The motion prayed that the “judgment rendered herein on the 28th of June, 1966, be set aside and annulled and a new trial granted in the premises.” The order attached to the motion and signed by the Court stated, “IT IS ORDERED BY THE COURT that Wellington August, the plaintiff herein, show cause to undersigned counsel on the 16th day of August, 1966, why a new trial should not be granted herein.” The brief filed with the motion urged the grounds that the award was excessive for the plaintiff in the main demand, and argued that the third-party defendants should also have been held liable unto the third-party plaintiff. The motion was served upon counsel for the plaintiff, and for the third-party defendants, Jay Egan, Richardson & Egan, Inc., and Globe Indemnity Company. The brief was likewise mailed to counsel for these parties by counsel for the plaintiff. On October 6, 1966 the motion for a new trial was heard with all of these aforementioned parties represented by their respective counsel. At the close, counsel for Globe Indemnity Company stated, “I’d like the record to show while we’re present today, it is conceded that no application for a new trial against the Third-Party Defendants was filed in this case.” The Court replied, “Let the statement be placed in the record” without objections being raised.
The motion for appeal was filed by Supreme Construction Company on November 17, 1966. Generally, a devolu-tive appeal must be taken within ninety days of the expiration of the delay for applying for a new trial, or the Court’s refusal to grant a new trial (or the mailing of notice thereof). C.C.P. Art. 2087. The pertinent point to be decided is whether the motion for a new trial encompass *198 ed the judgment dismissing the appellant’s third-party demand, and we think that it did. Admittedly the order was drawn with reference only to the plaintiff herein by counsel for the appellant, and counsel for appellant should have spoken up when the statement was made that the application for a new trial was not directed towards the third-party defendr ants. But this cannot obviate what is positively apparent in the record, that the motion for a new trial was clearly in reference to the entire judgment of June 28, 1966. All of the parties were apprised of the motion and present, and although the third-party defendant argues that the petition for appeal itself was directed only to that portion of the judgment of June 28, 1966 dealing with the main demand since the appellant referred to himself only as “defendant” therein, we find that this is also not the case. The appellant, who was the defendant in the main demand, appealed generally from the judgment of June 28, 1966, which included the Court’s decision on the third-party demand. The motion to dismiss is refused.
The appeal being allowed, however, avails little to the plaintiff, since we feel that the Trial Court was correct in dismissing the third-party demand. The third-party plaintiff cites R.S. 22:1260-1262 as the law governing the obligations of Jay Egan, Richardson & Egan, Inc., and its surety, in this case. In 1964 R.S. 22:1260 stated the procedure relative to the licensing of a surplus line broker, and stated the requirement that the applicant for such a license should keep in force a bond in favor of the state in the sum of $20,000, “conditioned that he will conduct business under the license in accordance with the provisions of this Part, and that he will promptly remit the tax provided by (another statute).” R.S. 22:1261 provides that a surplus line broker may place surplus line business for agents and brokers “licensed in this state for the kind of insurance involved, and may compensate such agent or broker therefor.” R.S.22:1262 is the most important statute concerning this case. It was amended and re-enacted in 1960 by Act 148, § 1 to read;
“A surplus line broker shall not knowingly place surplus line insurance with insurers unsound financially. The broker shall ascertain the financial condition of the unauthorized insurer before placing insurance therewith. The broker shall not so insure with any stock insurer having capital and surplus amounting to less than Six Hundred Fifty Thousand Dollars, or with any other type of insurer having surplus of less than Six Hundred Fifty Thousand Dollars unless there is on file with the Commissioner of Insurance a copy of a trust agreement certified to by the trustee, evidencing a subsisting trust deposit of not less than Five Hundred Thousand Dollars with a bank or trust company in the United States and which deposit is held for the protection of United States policyholders.
In addition to any other statements or reports required by this chapter, the Commissioner of Insurance may request from any licensee full and complete information respecting the financial stability, reputation and integrity of any unauthorized insurer with whom any such licensee has dealt, or proposes to deal, in the transaction of insurance business. The licensee shall promptly furnish in written or printed form so much of the information requested as he can produce. The Commissioner of Insurance, if he believes it to be in the public interest, may order such licensee in writing to place no further insurance business on Louisiana risks through such unauthorized company.” [1]
“Surplus lines” are insurance coverages which cannot be procured from authorized insurers. R.S. 22:1257.
*199 The evidence adduced in this case elicited the following facts: The Supreme Construction Company was insured by British International Insurance Company, the liability coverage being effective July 16,1964. During June of 1964 Richardson & Egan, Inc., through its representatives, filed at the Office of the Commissioner of Insurance for the State of Louisiana a XEROX copy of a trust agreement of the British International Company with the First National Bank of Kenosha, Wisconsin, wherein $500,000.00 worth of securities were placed in trust, as per Section 1262, in the bank at Kenosha, Wisconsin.
The trust agreement had attached to it a letter with a facsimile signature by L. M. Brickley, a senior vice-president and trust officer, which stated that the trust had been accepted by the bank.
Mrs. Mary Robinson, an attorney for the state Attorney-General's office assigned to the office of the Insurance Commissioner stated that Richardson & Egan, Inc. were advised that a certified copy of this agreement would be necessary. Jay Egan denied this. At any rate the XEROX copy was taken by the Insurance Commissioner’s office and placed on file. A certified copy was never provided to the Commissioner’s office.
The policy with British International Insurance Company, dated July 16,1964, listed the producer as Gulf Surplus Brokers, who in reality was Richardson & Egan, Inc. Gulf Surplus Brokers was in reality an unlicensed trade name utilized by Richardson & Egan, Inc.
Subsequently the trust agreement itself in the Kenosha First National Bank was discovered to be fraudulent and parties connected with the British International Insurance Company were indicted for their activities. There is no doubt, however, that the trust agreement was actually on file in the bank in Wisconsin.
Mr. Brickley of the Kenosha Bank testified that the XEROX copy was a duplicate of the trust agreement on file at the bank and the agreement had been acceptable to the bank.
Jay Egan testified that the policy placed in July of 1964 was placed on behalf of one John Howard, an insurance broker, the named insured being Supreme Construction Company. He testified that prior to placing the insurance he did investigate the financial condition of the company in that he had met with representatives of the company and discussed the financial background thereof with them. In addition he obtained a brochure from the company which outlined in a general fashion the financial status of the company. This statement showed the company having the solvency required by statute. It was at the instance of Richardson & Egan, Inc. that the trust agreement was obtained. These brokers also had producer and correspondent agreements with British International Insurance Company whereby they were to earn consideration for placing insurance.
The appellant urges that the third-party defendants are liable because of the following :
“1. It did not investigate the financial condition of British International Insurance Company prior to the placing of Supreme Construction Company’s insurance with that company.
2. Richardson & Egan Insurance Agency, Inc. (sic) was using a nonexistent company, Gulf Surplus Brokers, who were not authorized as surplus line insurers in Louisiana and had not posted the required bond as provided in LSA-R.S. 22:1260.
3. That at no time was a trust agreement filed, as required by LSA-R.S. 22:1262.”
Under the facts stated, however, it is apparent that the financial condition of British International Insurance Company was investigated prior to the placing of Su *200 preme Construction Company’s insurance and, in addition to this, there was a trust agreement on file. Even though this agreement may not have been technically formally certified to, the result is not altered, since the attesting letter with the facsimile signature was in fact the letter as written by the officer of the Kenosha Bank in Wisconsin. The certification would have added nothing to the protection of the insured in this case at the time the policy was written and at the time of the accident. Moreover, there was no showing by third-party plaintiff of the actual financial condition of the company at the time the insurance was placed.
Although it be admitted that Richardson & Egan, Inc. used an unauthorized trade name, it was conceded that it was the broker involved, and the use of the trade name was in no way a causal factor of the third-party plaintiff’s loss, due to the worthless condition of the insurer. The case of Kline v. Globe Automobile Finance Company, et al, 100 So.2d 517 (La.App.1958), cited by appellant, is distinguishable in that there was no investigation of the insurer’s financial condition by the broker charged with liability, nor was there any trust agreement provided for in the law at that time, or utilized by the broker. The Court found that, had an investigation occurred, it would have discovered the “deplorable financial condition of the insurer.”
We find no error in those instances in which the Court below maintained the objections to Miss Robinson’s testimony. As it was, the Court gave her considerable leeway in expressing her interpretation of the law, and since the Court is the official interpreter of the laws of this state, we fail to see how there can be prejudicial error in refusing to hear the opinion of an “expert on the law.”
QUANTUM
The plaintiff saw Doctor David W. Aiken, the only doctor whom he saw and who testified, on August 11, 1964 and on August 24, 1964 and again on January 14, 1966 and February 18, 1966. The evidence indicates that he suffered a chipped fracture of a tooth, moderate sprain and contusion of the dorsal lumbar spine and experienced dizziness as a result of the accident. The doctor, after the plaintiff’s visit, felt that he would recover within a relatively short period of time and had prescribed rest from heavy duties, rubbing with liniment and analgesics. He also told the plaintiff to use a bedboard under his mattress, to sleep on, and on one occasion prescribed a corset brace. By January 14, 1966, over a year later, the plaintiff had not improved, and the evidence shows that he had not followed the doctor’s instructions with regard to resting from his duties, which the doctor ascribed as contributing to his lack of recovery. The plaintiff explained however that he could not afford to stop work and the evidence indicates him to be a married man with children, earning about $78.00 a week. Under these circumstances, the judgment below for the injury is not manifestly erroneous and we do not care to attempt to substitute our own con-, elusions for those of the trial Court.
The intervenor herein, American Bankers Insurance Company of Florida, has answered the appeal and seeks judgment in its favor as subrogee, for the sum of $183.15, the amount paid by1 it for property damage. This judgment was apparently omitted in the Court below, through oversight, in view of a stipulation entered into by the parties, to the effect that if a judgment were rendered in favor of the plaintiff then, by consent, judgment should be rendered in the above amount in favor of inter-venor. Supreme Construction Company having acquiesced therein, this judgment is granted.
In addition, Supreme Construction Company has asked for judgment against British International Insurance Company for those sums for which it would be held liable, and for reasonable attorney’s fees under the insurance coverage. It is entitled to judgment in the amount of $3096.00, *201 which was awarded to the plaintiff, and $183.15, which was awarded to intervenor. However, no evidence was introduced as to the reasonable value of the attorney’s services and the rights of the third-party plaintiff are hereby reserved on this claim.
There is judgment herein in favor of American Bankers Insurance Company of Florida on its intervention and against Supreme Construction Company for $183.15.
There is also judgment in favor of Supreme Construction Company and against British International Insurance Company in the sums of $3096.00 and $183.15. The judgment rendered on June 28, 1966 is affirmed in all other respects, appellant to bear costs.
Affirmed.

. R.S. 22:1262 has been amended by Acts 1966, No. 175, § 1 since institution of this suit.