614 So.2d 1360 (1993)
GULF COAST BUILDING SYSTEMS, INC., Plaintiff-Appellee-Appellant,
v.
UNITED AMERICAN SURETY COMPANY, LTD., et al., Defendants-Appellants-Appellees.
No. 92-255.
Court of Appeal of Louisiana, Third Circuit.
March 3, 1993.
Writ Denied May 14, 1993.
*1361 Debra Jean Becnel, Richard Paul Weimer, Lafayette, for Gulf Coast Bldg. Systems Inc. etc, et al.
Warren D. Rush, Gina Rush Calogero, Lafayette, for United American Sur. Co. Ltd., et al.
Lawrence Sandoz Jr., Opelousas, for UAS/UAC.
James L. Pate, Robert Edwin Torian, Lafayette, for Employers.
Larry R. Peterson, pro se.
Before DOMENGEAUX, C.J., and KNOLL and SAUNDERS, JJ.
SAUNDERS, Judge.
This appeal arises from a judgment in favor of the plaintiff, Gulf Coast Building Systems, Inc. (Gulf Coast), and against defendants, William D. Quinlan Agency, Inc. d/b/a The Insurance Center of New Iberia-Lafayette (The Insurance Center), Employers Reinsurance Corporation (ERC), Larry Peterson, United American Surety Company, Ltd. (United American Surety), and Financial Surety Underwriters, Inc. (Financial Surety).
Defendants, The Insurance Center and ERC, appeal the finding of liability by the trial court; Gulf Coast additionally appeals the damage award.

FACTS
In June or July of 1988, Gulf Coast bid and obtained a construction job on a renovation project of a medical center/hospital in South Carolina. The general contractor on the job, Primesouth, Inc., required a performance and payment bond in its favor in the contract amount of $2,685,715.00.
Gulf Coast contacted David Hebert of The Insurance Center to obtain the bond. The Insurance Center had previous dealings with Gulf Coast in placing performance and payment bonds for Gulf Coast's projects. After several attempts, Hebert could not find a company to write the bond because of its size and the fact that Gulf Coast lacked the financial strength to justify such a bond, particularly in light of the fact that the project was in South Carolina.[1]
Hebert next contacted Larry Peterson with Financial Surety. The Insurance Center had previously placed difficult bonds through Peterson and Financial Surety. Peterson knew of a company, United American Contractors Association (United American Contractors), which had an affiliated *1362 bonding company known as United American Surety.
In order for Gulf Coast to apply for the bond, it first had to join the United American Contractors Association, which it did by paying a $500.00 fee. Hebert provided Peterson with a copy of Gulf Coast's contract with Primesouth and thereafter, Peterson undertook to procure the bond. The Insurance Center did not know of the terms and conditions of the bond and never saw the bond which was issued until the lawsuit was filed. The Insurance Center was not requested to and did not approve the form or content of the bond and did not represent to Gulf Coast that the bond was sufficient for the purposes for which it was intended. The Insurance Center was not paid a fee, but Hebert admitted he did expect a commission on the transaction.
Initially, United American Surety did not want to write the bond and would not write one in Gulf Coast's favor for the whole subcontract amount. After continued efforts by Peterson, United American Surety agreed to issue a bond on behalf of Gulf Coast in favor of Primesouth, Inc. on a phasing basis established by periodic increments of specific work and costs over the term of the contract.
Gulf Coast was required to give United American Surety a promissory note and a letter of credit and to pay the sum of $67,143.00 to Financial Surety for issuance of the bond. On November 8, 1988, Gulf Coast issued a check for $67,143.00 to Financial Surety. Of that amount, $26,857.27 was retained by Peterson and Financial Surety, and the balance was sent to United American Surety. Gulf Coast was also required to obtain a letter of credit from Premier Bank, which it did at a cost of $3,000.00.
In December, 1988, Gulf Coast received two documents: one entitled "Performance Bond" bearing bond number SB01671; and a second entitled "Labor and Material Payment Bond," also bearing bond number SB01671. Neither bond was in the required amount of $2,685,715.00, for which the payment of $67,143.00 had been paid. Each bond was in the amount of $597,985.00.
Gulf Coast then contacted Hebert and notified him of the fact that the bonds were not for the required amount of $2,685,715.00. Hebert admitted knowing the bonds were not what Gulf Coast had requested, but denied ever suggesting to Gulf Coast to sign them and submit them to Primesouth. On the other hand, Gulf Coast claims Hebert did suggest that the bonds be signed and sent to Primesouth and assured it that if the bonds were not accepted by Primesouth, that the premium would be refunded. Gulf Coast signed the bonds and sent them to Primesouth.
Primesouth reviewed the bonds, and determined that they did not meet the contract's requirements. The bonds were on a purported AIA form A311, and appeared to be standard AIA bonds. However, the bonds contained a special condition limiting its liability as surety which is not found on a standard AIA bond. Furthermore, the bonds were not written for the entire amount of the contract; were not issued by a surety licensed in the State of South Carolina; and were not written by a surety with an "A" minimum rating. In addition, Primesouth learned that United American Surety had been subject to disciplinary actions by insurance commissioners in various states. Primesouth accordingly rejected the bonds and forwarded a full release to United American Surety on December 22, 1988.
Gulf Coast subsequently engaged in negotiations with Primesouth in order to find an alternative to the bond required. An agreement was reached whereby Gulf Coast would provide a letter of credit directly to Primesouth and a bond would not be necessary.
Gulf Coast requested a refund of its payment. Neither Peterson, Financial Surety, nor United American Surety refunded the payment, contending United American Surety had exposure on the bonds for the few days Gulf Coast was on the job site and there had been work on the project before the bonds had been rejected. United American Contractors also refused to *1363 refund the $500.00 paid by Gulf Coast for its membership fee.
Gulf Coast filed this lawsuit. Made defendants were Financial Surety, Larry R. Peterson, The Insurance Center, United American Contractors and United American Surety. Gulf Coast amended its petition to make ERC, the errors and omissions insurer of The Insurance Center, a defendant.
In its petition, Gulf Coast averred that the defendants were liable, in solido, for the damages resulting from the actions of The Insurance Center, Peterson, and Financial Surety, who undertook to procure the bond, and damages resulting from the actions of United American Contractors and United American Surety in issuing the defective bonds.
The Insurance Center filed a cross-claim against United American Contractors, United American Surety and Financial Surety; and ERC filed a cross-claim against United American Contractors and United American Surety, Financial Surety and Larry Peterson.
ERC filed a Partial Motion for Summary Judgment. In its memorandum in support, ERC submitted the following facts: (1) Although Gulf Coast seeks various elements of damages, the primary demand against the defendants, including The Insurance Center and ERC, is for the return of the $67,143.00 payment; (2) ERC does not provide errors and omissions insurance coverage for Gulf Coast's claim for the return of the premium payment under the express terms of the ERC policy issued to The Insurance Center.
According to ERC, the errors and omissions policy issued to The Insurance Center simply provided no coverage. Accordingly, there existed no issue of material fact and it was entitled to partial summary judgment as a matter of law. After a hearing on the matter, the trial judge granted the partial summary judgment, "insofar as Gulf Coast Building System, Inc.'s claim against Employers Reinsurance Corporation is found to be a claim for a return of premium, coverage is excluded under Section VI(f) of the errors and omissions policy issued to The Insurance Center by Employers Reinsurance Corporation."
Trial on the merits began on September 3, 1991. Following the trial, on September 17, 1991, the trial court issued its reasons for ruling. On September 25, 1991, the trial court issued Amended Reasons for Ruling. Judgment was signed on October 3, 1991, as follows:
IT IS ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of plaintiff, GULF COAST BUILDING SYSTEMS, INC., and against the defendant, UNITED AMERICAN CONTRACTORS ASSOCIATION, in the amount of FIVE HUNDRED FIFTEEN AND 95/100 ($515.95) DOLLARS, with legal interest from the date of judicial demand, until paid;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of plaintiff, GULF COAST BUILDING SYSTEMS, INC., and against the defendants, WILLIAM D. QUINLAN AGENCY, INC., d/b/a INSURANCE CENTER OF NEW IBERIA-LAFAYETTE, LARRY R. PETERSON, UNITED AMERICAN SURETY COMPANY, LTD., FINANCIAL SURETY UNDERWRITERS, INC., and EMPLOYERS REINSURANCE CORPORATION, in solido, in the amount of SEVENTY TWO THOUSAND THREE HUNDRED FORTY NINE AND 50/100 ($72,349.50) DOLLARS, with legal interest from the date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be judgment herein in favor of WILLIAM D. QUINLAN AGENCY, d/b/a INSURANCE CENTER OF NEW IBERIA-LAFAYETTE, against cross-defendants, UNITED AMERICAN SURETY COMPANY, LTD., and FINANCIAL SURETY UNDERWRITERS, INC., jointly, severally and in solido, for the full amount of the judgment rendered against it, together with judicial interest from date of judicial demand until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that there be *1364 judgment in favor of EMPLOYERS REINSURANCE CORPORATION against cross-defendants, UNITED AMERICAN SURETY COMPANY, LTD., FINANCIAL SURETY UNDERWRITERS, INC., and LARRY R. PETERSON, jointly, severally, and in solido, for the full amount of the judgment rendered against it, together with legal interest from date of judicial demand, until paid.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that the expert witness fees which are taxed as cost shall be as follows: Allen Thomas $250.00; William Ellsworth $250.00; Steve Hollier $250.00; Mark Harris $250.00. Defendants are to pay all costs of these proceedings, including the court reporter fee due Ms. Margaret Duhon in the amount of $562.50.
ERC filed a motion for new trial. In its motion, ERC asked the trial court to reconsider its decision regarding ERC's claim that a "return of premium" exclusion in its policy is applicable to the $67,143.00 claim. The motion was denied.

THE APPEAL
The Insurance Center, Gulf Coast, and ERC appeal the judgment of the trial court.
The Insurance Center contends the trial court erred in awarding judgment in favor of Gulf Coast and against The Insurance Center, since Gulf Coast's loss was occasioned because of the acts and omissions of Gulf Coast and Primesouth, without any contributing fault of The Insurance Center.
ERC contends the trial court erred in finding that the "return of premium" exclusion in the policy it issued to The Insurance Center was not applicable to the $67,143.00 claim for return of premium by Gulf Coast against The Insurance Center; and the trial court erred in finding The Insurance Center negligent in procuring a performance and payment bond for Gulf Coast.
In its appeal, Gulf Coast asserts the following assignments of error:

IV. ASSIGNMENTS OF ERROR
1. The trial court committed error in awarding conventional interest on the bond payment and letter of credit fee only from date of draw until date of judicial demand.
2. The trial court committed error in granting the Motion In Limine of Employer's Reinsurance Corporation and ruling that attorney's fees were not recoverable.
3. The trial court committed error in disallowing plaintiff's claim in the amount of $40,401.00 representing lost profits.
4. The trial court committed error in disallowing plaintiff's claim in the amount of $20,403.00 representing discounts lost and carrying costs paid.
We affirm the trial court's judgment as to all of the issues presented on appeal for the reasons set forth below.

THE INSURANCE CENTER'S APPEAL:
In its brief, The Insurance Center argues that it fulfilled its duty to Gulf Coast insofar as the law requires that an insurance agent/broker diligently try to procure the coverage requested by his client and promptly notify the client if he is unable to do so. The Insurance Center places blame on Financial Surety and Larry Peterson, as well as Gulf Coast, suggesting to this court that it did not represent Gulf Coast in procuring the bonds and had no duty to Gulf Coast with regard to it after the bond's acquisition was referred to Peterson, and Gulf Coast began dealing directly with Peterson and Financial Surety.
Whether an insurance broker in any particular transaction acts as agent of the insured or of the insurer, is a question of fact dependent upon the particular circumstances of the case. Economy Auto Salvage v. Allstate Ins. Co., 499 So.2d 963 (La.App. 3d Cir.), writ denied, 501 So.2d 199 (La.1986). Contrary to its argument, The Insurance Center's actions were not merely perfunctory and were not done as a courtesy. The evidence indicates that Gulf Coast, for several years, had relied on the expertise of The Insurance Center in taking care of its insurance needs. The Insurance Center *1365 was clearly acting as an agent/broker throughout the course of the transaction.
The facts in this case convince us, as they did the trial judge, that The Insurance Center began the chain of events culminating in plaintiff's loss and remained the agent of Gulf Coast and it did not make a reasonable attempt to ascertain whether the bonds had met the contract requirements. The jurisprudence has recognized that a broker's fiduciary duty includes advising his client with regards to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of cancellation or termination of coverage. The insurance broker is not a mere "order taker." See Durham v. McFarland, Gay and Clay, Inc., 527 So.2d 403 (La.App. 4th Cir.1988), and cases cited therein; and Naulty v. OUPAC, Inc., 448 So.2d 1322 (La.App. 5th Cir.1984).
Upon Gulf Coast's request for a bond, The Insurance Center was under a continuing duty to advise Gulf Coast, and to investigate and ascertain the financial condition of the surety companies and to ensure the bond met the requirements set forth in the construction contract between Gulf Coast and Primesouth. It did not. The Insurance Center clearly breached its duty to Gulf Coast in not making an effort to ascertain the contents of the bond or to ensure that Gulf Coast obtained the bond for the amount requested.

EMPLOYER'S REINSURANCE CORPORATION'S APPEAL:
In its reason for judgment, the trial court stated:
Employer Reinsurance Corporation is liable to the plaintiff for the previously mentioned actions and/or inactions of The Insurance Center. While the policy issued by Employers does contain an exclusion for claims for return of premiums, this is clearly not a suit for return of premiums. Instead, plaintiff is seeking damages predicated upon The Insurance Center's negligence and/or fault. Thus the exclusion does not apply in this case.
We agree with the trial judge. The action was a suit ex delicto brought against the defendants for damages sustained by their negligence. The Insurance Center clearly breached its duty to Gulf Coast in the transaction with both Financial Surety and United American Surety. The breach is the cause in fact of Gulf Coast's damages. The primary objective in awarding damages is to restore the injured party in as near a fashion as possible to the state he was in at the time immediately preceding injury. LSA-C.C. art. 2315. Compensating Gulf Coast by awarding it the amount it paid for the defective bonds achieves this and is a proper award of damages. Accordingly, the trial court's findings are correct.

GULF COAST'S APPEAL:
Gulf Coast seeks to recoup some $25,372.00 which it claims represents a portion of the loss sustained as a result of the negligence of the defendants. Before a court of appeal can disturb a damage award made by the trial court, the record must clearly reveal that the trial court abused its discretion in making its award. Charles v. Arceneaux Ford, Inc., 542 So.2d 846 (La.App. 3d Cir.1989); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The trial court, in its amended reasons, found the defendants liable for the sum of $70,143.00. The trial court further provided that legal interest would run from the date of judicial demand until paid and the defendants were liable for conventional interest on the bond and letter of credit fee from the date of draw until the date of judicial demand. The effect of this ruling, according to Gulf Coast, denies it over $25,000.00 in interest paid on the bond fee and letter of credit fee.
Gulf Coast argues that the sums it borrowed for the bond fee and letter of credit were borrowed on its line of credit with Premier Bank. It further argues that the $25,372.00 interest was included in its claim as a measure of damages. Gulf Coast is claiming interest on the funds it borrowed in addition to legal interest on that interest.
*1366 In Stewart v. Ainsworth, 446 So.2d 474 (La.App. 4th Cir.), writ denied, 447 So.2d 1072 (La.1984), the court addressed a similar attempt by the plaintiff to recover interest in addition to, or in excess of, legal interest. The court rejected plaintiff's attempt and held that LSA-R.S. 13:4203, which states that legal interest shall attach from date of judicial demand on all judgments sounding in tort, provides an exclusive remedy to compensate a tort claimant for interest losses incurred in any fashion "whether by payment of interest on funds borrowed by the tort claimant to make repairs, pay medical bills, etc...." 446 So.2d at 475.
Further, conventional interest presupposes a contract and in order to be enforceable, it must be in writing. Stewart, id. at 475. There was no contract between Gulf Coast and any of the defendants in this case regarding interest rates. See First State Bank & Trust Co. v. Seven Gables, 501 So.2d 280 (La.App. 1st Cir. 1986), writ denied, 502 So.2d 103 (La.1987). The trial court properly denied the interest paid to Premier Bank.
Gulf Coast's remaining arguments are also without merit. Briefly addressing assignment of error No. 2, we find nothing in the record to support the inference that the defendants acted fraudulently. The trial judge was correct in ruling that attorney's fees were not recoverable in this case. See LSA-C.C. art. 1953.
As to Gulf Coast's assignments of error Nos. 3 and 4, we find no basis in the record which substantiate its argument for lost profits or loss of use of funds. The proof to substantiate a claim for damages must be clear and definite and not subject to conjecture. Burton v. Jardell, 589 So.2d 610 (La.App. 2d Cir.1991). Without the necessary support, we reject Gulf Coast's contentions. We do not find that Gulf Coast has shown these damages by clear and definite proof.
We find no manifest error in the factual findings of the trial court and no abuse of discretion in the amounts awarded.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are cast proportionately between The Insurance Center, Employers Reinsurance Corporation, and Gulf Coast.
AFFIRMED.
NOTES
[1] Hebert contacted CNA Insurance, Travelers Insurance Company, St. Paul Insurance Company, Hartford Insurance Company and the United States Fidelity and Guaranty Company, all of whom refused to write the bond.