640 So.2d 800 (1994)
ACADIANA SHRIMPERS, INC., Plaintiff-Appellant,
v.
PHOENIX FIRE & MARINE INSURANCE COMPANY, LTD., et al., Defendants-Appellees.
No. 93-1640.
Court of Appeal of Louisiana, Third Circuit.
June 1, 1994.
*801 Joe Payne Williams, for Acadiana Shrimpers, Inc.
James L. Pate, Robert Edwin Torian, for Phoenix Fire & Marine Ins. Co., Ltd.
Paul M. Mandot, for Paul M. Mandot.
Walter E. Mazur, for Walter E. Mazur.
Kasko & Lager and SMC Underwriters, for Kasko & Lager and SMC Underwriters.
Before KNOLL, THIBODEAUX and SAUNDERS, JJ.
THIBODEAUX, Judge.
Plaintiff, Acadiana Shrimpers, Inc., appeals a judgment dismissing its action for a breach of fiduciary duty against defendant, Schwing Insurance Agency, Inc. and its insurer, Employers Reinsurance Corporation. For the following reasons, we affirm.

*802 FACTS
From 1985 to 1987, Acadiana owned and operated a shrimp boat, the "Nellie Dee." New Iberia Bank, which held the mortgage on the boat, required Acadiana to obtain hull insurance and suggested Schwing as the insurance agency. Acadiana related its needs to Schwing, which in turn obtained ocean marine insurance on the "Nellie Dee" with St. Paul Insurance Company.
In April, 1987, the Eagle One Group assumed the note on the "Nellie Dee." Eagle One also utilized Schwing to purchase insurance for the boat. Schwing obtained coverage by using a licensed surplus line broker, Colonial Underwriters, Inc., which obtained the insurance through Kasko & Lager (North America), Inc., the managing general agent for the eventual insurer, Phoenix Fire & Marine Insurance Company, Ltd. Phoenix, a United States Virgin Islands insurance company, issued a policy covering the "Nellie Dee."
Acadiana repossessed the "Nellie Dee" in June of 1990. William Richard, president of Acadiana, contacted Schwing and requested the best premium it could get with an insurer approved by the bank. Schwing had the "Nellie Dee" reinsured with Phoenix. The binder was sent to the bank and not seen by Acadiana.
In July of 1990, Phoenix received a cease and desist order from the United States Virgin Islands Department of Insurance prohibiting it from issuing any new policies. It was still paying claims at that time.
On February 23, 1991, the "Nellie Dee" was destroyed by fire. Phoenix investigated the accident, determined the boat was a total loss, received proof of the loss and related to Schwing and Acadiana that it would pay the claim. However, in July of 1991, Phoenix was put into conservatorship and eventually into liquidation. Acadiana's claim was never paid. This suit followed.
A bench trial was held and the trial court found: Schwing did not breach its fiduciary duty to Acadiana; La.R.S. 22:1252 does not apply to ocean marine insurance; La.R.S. 22:1262 and 22:1269 apply to surplus line brokers and not to agents such as Schwing; and Schwing was not liable for the insolvency of Phoenix. Judgment was signed accordingly. Acadiana appeals.

ISSUES
(1) Whether Schwing breached its fiduciary duty to Acadiana;
(2) Whether La.R.S. 22:1252 applies to ocean marine insurance and, if so, whether Schwing violated that statute;
(3) Whether Schwing violated La.R.S. 22:1262 and 22:1269; and
(4) Whether La.Civ.Code art. 3007 makes Schwing responsible for the acts of Colonial.

LAW AND DISCUSSION

I. Breach of Duty
Acadiana contends that Schwing breached its fiduciary duty when it obtained insurance on the "Nellie Dee" from Phoenix. Specifically, it argues that Schwing should have personally inspected the financial records of Phoenix, especially at the time the boat was reacquired by Acadiana, that Schwing should have made it known that the insurer was an unauthorized "off-shore" company and that the use of a surplus line agent would be necessary.
In Gulf Coast Building Systems, Inc. v. United American Surety Company, Ltd., 614 So.2d 1360, 1365 (La.App. 3d Cir.), writs denied, 617 So.2d 933, 934 (1993), we recently stated:
"The jurisprudence has recognized that a broker's fiduciary duty includes advising his client with regards to recommended coverage, investigating and ascertaining the financial condition of prospective companies, and notifying the insured of cancellation or termination of coverage. The insurance broker is not a mere `order taker.' " (Citations omitted).
After a determination of the facts, we must consider whether the actions of the agent "began the chain of events culminating in the plaintiff's loss of insurance protection." Naulty v. OUPAC, Inc., 448 So.2d 1322 (La. App. 5th Cir.1984). Factual determinations are the province of the trial court and will *803 not be disturbed unless clearly wrong. Stobart v. State, DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989).
The trial court made the following factual findings. Walter Mazur, the president of Colonial, personally reviewed the financial records of Phoenix for the years of 1987 and 1988 at the Miami office of Phoenix's agent, Kasko & Lager. Mazur related to Schwing that Phoenix was financially sound and offered legitimate and feasible coverage for fishing vessels. Schwing purchased insurance with Phoenix based on the representation made by Mazur and Colonial. During the two years the vessel was owned by Eagle One and insured by Phoenix, nothing arose to cause either Schwing or Colonial to suspect Phoenix had financial difficulties.
When Richard requested insurance for the "Nellie Dee," he sought the cheapest premium obtainable from an insurance company approved by the bank. Schwing believed Phoenix met Acadiana's needs based on the two previous years of association and its highly competitive premium rate. The bank approved it as an insurer and the insurance was placed.
Based on the foregoing findings, the trial court concluded Schwing's reliance on Colonial was well placed due to the business relationship of over twenty years between Mazur and representatives of Schwing. The court also concluded that Schwing responded as requested by Richard and met the needs of Acadiana. Accordingly, it found that Schwing did not breach its fiduciary duty to Acadiana.
A presumption exists that the surplus line broker diligently performed its duty. See, Scarborough v. Nelson, 371 So.2d 1261 (La.App. 3d Cir.1979). The facts as found by the trial court and as evidenced by the record substantiate that Colonial conducted proper inquiries into the financial status of Phoenix. The facts also indicate that Schwing had reason beyond presumption to rely on the opinion of Colonial, given their long business relationship. Finally, the evidence reveals that Acadiana received the exact insurance it had requested: a low premium with a company approved by the bank. The bank had no objection, Acadiana paid the premium and no one had any complaints until Phoenix was declared insolvent.
We conclude that Schwing did not breach its fiduciary duty to Acadiana. It is unfortunate that Phoenix could not meet its obligation but, at the time the insurance was obtained, it was still meeting its obligation and there was no reason to suspect or inquire into its financial status. Consequently, we cannot say Schwing's actions was the catalyst that led to Acadiana's loss. This issue is without merit.

II. Applicability of La.R.S. 22:1252
Acadiana argues that Schwing violated La.R.S. 22:1252 which prohibits persons from acting as an agent for an insurer unauthorized to do business in this state. This argument ignores the plain language of La. R.S. 22:1249(B)(7) which specifically excepts ocean marine insurance from sections of the Insurance Code pertaining to the transaction of business by an unauthorized insurer. Moreover, the evidence indicated the Louisiana Insurance Commissioner's Office considers ocean marine insurance not generally regulated by the Insurance Code.
In Grubbs v. Gulf International Marine, Inc., 625 So.2d 495 (La.1993), the court determined that an ocean marine insurer could be sued under the Louisiana Direct Action Statute. The gist of the court's opinion was that the language of the statute and the fact that it preexisted the Insurance Code combined to apply to all claims, even ocean marine. In reaching its conclusion, the court discussed how the Insurance Code specifically excludes ocean marine insurance from several areas of its authority. The conclusion we reach from that analysis is that La.R.S. 22:1252 does not apply to Schwing because La.R.S. 22:1249(B)(7) specifically excludes ocean marine insurers from that section of the Insurance Code.

III. La.R.S. 22:1262 & 22:1269
Acadiana argues that Schwing violated La.R.S. 22:1262 and 22:1269. La.R.S. 22:1262(A) states "[a] surplus line broker shall not knowingly place surplus line insurance with insurers unsound financially." La. *804 R.S. 22:1269 mandates what is required of a surplus line broker in order for it to conduct business with an unauthorized insurer, even one selling only ocean marine insurance. The trial court found the foregoing statutes apply solely to surplus line brokers and, as Schwing is not a surplus line broker, it could not have violated the statutes. We agree.
Schwing is clearly not a surplus line broker and cannot be held to violate the foregoing statutes. Although it is not clear in Acadiana's brief, its argument appears to be that a violation by Colonial of the foregoing statutes imputes a duty breached by Schwing for relying on Colonial or that since Schwing is characterized by Acadiana as a surplus broker, it is liable. As discussed above, Schwing had no reason to question the actions of Colonial. Moreover, it was not proven that Colonial violated the statutes. Consequently, this issue lacks merit.

IV. La.Civ.Code art. 3007
The last argument urged by Acadiana is that La.Civ.Code art. 3007 imposes liability on Schwing for the actions of Colonial. La. Civ.Code art. 3007 states the following:
The attorney is answerable for the person substituted by him to manage in his stead, if the procuration did not empower him to substitute.
For art. 3007 to apply, Schwing must have substituted Colonial for itself to perform its duties to Acadiana without Acadiana's consent. Such is not the case. The testimony established that due to the high risk involved, insurance on fishing vessels is sometimes difficult to obtain. As a result, it is most often necessary that such insurance be obtained through a surplus line broker. This is the exact situation with which we are presented. Furthermore, Schwing could not place direct coverage with Phoenix Fire.
In order to obtain insurance from Phoenix, Schwing had to utilize a surplus line broker. Schwing did not engage Colonial to perform its duty to Acadiana; rather, Schwing and Colonial entered into a transaction made necessary by the particular insurance business conducted. These actions do not give rise to liability under art. 3007.
Moreover, even if the use of the surplus line broker was considered a substitution under the article, we believe, as the trial court found, there was a tacit acceptance of such a substitution because of the frequency with which surplus line brokers are used in insuring fishing vessels. Richard's request was for the lowest premium with a company approved by the mortgage holder. The testimony established that it is generally necessary to rely on a surplus line broker because of the difficulty in obtaining insurance for fishing vessels. Thus, in requesting the lowest premium, Acadiana was tacitly accepting all reasonable methods Schwing would utilize to obtain that premium. This issue is also without merit.

CONCLUSION
For the foregoing reasons, the judgment dismissing the suit of Acadiana Shrimpers, Inc. against Schwing Insurance Agency, Inc. is affirmed. Acadiana is charged with the costs of this appeal.
AFFIRMED.