Judge MICHAEL E. KIRBY.
Deep South Towing, Inc. (hereinafter “DeepSouth”), plaintiff/insured appeals the Judgment in favor of defendants, Sedgwick of New Orleans and Marsh U.S.A., Inc. (hereinafter “Sedgwick” or “Marsh”), that dismissed plaintiffs claims with prejudice where the trial court found defendant’s negligence did not create a risk that proximately caused plaintiff harm.

STATEMENT OF THE FACTS

On April 28, 1996, plaintiff obtained ocean marine liability insurance through its broker, Sedgwick,[1] with a surplus lines insurer, HIH Casualty and Marine Insurance Company of Australia (hereinafter “HIH”). This policy was renewed annually on at least two occasions and the Jones Act lawsuit that caused a loss to plaintiff occurred during the 1998-99 policy period.
This foreign insurer did not meet the financial qualifications required by Louisiana law for placement on the Commissioner of Insurance’s “white list” — a glist compiled and maintained by the Commissioner of Insurance of unauthorized insurers who *104 have met certain statutory requirements indicative of the requisite financial soundness and stability. La. R.S. 22:1262 and 22:1262.1, require surplus line brokers to place insurance with an insurer on a list of approved, non-admitted insurers maintained by the Louisiana Commissioner of Insurance known as the “white list.”
HIH was not on the “white list.” Nevertheless, Sedgwick placed Deep South’s insurance with HIH and continued to place it with HIH during the following policy periods.
In March of 1999, during the effective policy period from April 1998 to April 1999, a seaman employee of Deep South, Russell Cacho, suffered injuries, filed a Jones Act lawsuit against Deep South and, in September of 2001, obtained a judgment in his favor against Deep South. That claim was never paid by HIH. Moreover, HIH was dismissed from Mr. Cacho’s suit as a result of a stay order issued by the United States Bankruptcy Court for the Southern District of New York. Deep South has suffered over a half million dollars in economic loss due to the failure of HIH to fulfill its obligations according to their insurance policy.
On April 30, 2001, Deep South filed suit against Sedgwick and Marsh, seeking full indemnity against them for their alleged breach of duty as brokers to assure that HIH was on the Insurance Commissioner’s “white list,” as per La. R.S. 22:1262.1.
Marsh filed an exception based on the three-year peremptive period under La. R.S. 9:5606, which provides that no action for damages may be filed against an insurance broker later than three years after the date of the alleged act, omission, or neglect. The trial court denied the exception, upon concluding that plaintiff had filed suit within three years of defendants’ actions in placing the insurance for the policy period beginning in April 1998.
However, the trial court dismissed with prejudice plaintiffs claims against defendants finding that the risk of an unauthorized insurer becoming financially insolvent after two annual renewals does not fall within the scope of the duty of a surplus line broker.

STATEMENT OF THE LAW

Under Louisiana insurance law, there are status classifications for insurers. Most insurance purchased by Louisiana insureds is purchased from insurers that are “admitted” in Louisiana as “authorized” insurers. Such insurers are subject to extensive regulatory and statutory requirements. However, sometimes special insured needs cannot be satisfied by admitted authorized insurers. Coverages which cannot be obtained from admitted authorized insurers are referred to as “surplus lines” and may be obtained from non-admitted unauthorized insurers. See La. R.S. 22:1257; Popich Bros. Water Transport, Inc. v. Gulf Coast Marine, Inc., 97-0902, p. 3 (La.App. 4 Cir. 1/14/98), 705 So.2d 1267, 1268-69; August v. British International Ins. Co., 201 So.2d 194, 198 (La.App. 4 Cir.1967). Such surplus lines insurance must be obtained through a licensed surplus lines broker. Id.
Brokers can be divided into two types: standard brokers, who procure insurance from insurers who are admitted or licensed in this state, and surplus lines brokers. La. R.S. 22:1132(18) defines surplus lines broker as such:
(18) “Surplus lines broker” shall mean an insurance producer who solicits, negotiates, or procures a property and casualty policy with an insurance company not licensed to transact business in the state which cannot be procured from insurers licensed to do business in this state. All transactions entered into un *105 der such license shall be subject to R.S. 22:1249 et seq.
As such, a surplus lines broker is also an insurance producer per 22:1132(6), to wit:
(6) “Insurance producer” shall mean a person required to be licensed under the laws of this state to sell, solicit, or negotiate insurance, and includes all persons or business entities otherwise referred to in the Louisiana Insurance Code as “insurance agent” or “agent”, or “insurance broker” or “broker”, or “insurance solicitor” or “solicitor” or “surplus lines broker”
HIH was not admitted in Louisiana and defendant states that it is a surplus lines broker. Surplus lines insurance and surplus lines brokers are subject to specific statutory provisions. For our purposes in this case the most relevant are La. R.S. 22:1262 and 1262.1.
On July 15, 1997, the Louisiana Legislature amended the law dealing with unauthorized insurance. La. R.S.22:1248 et seq. La. R.S. 22:1248 states the purpose and necessity for regulation of unauthorized insurance, to wit:
This Part shall be liberally construed and applied to promote its underlying purposes which include:
(1) Protecting persons seeking insurance in this state.
(2) Permitting surplus lines insurance to be placed with reputable and financially sound unauthorized insurers under the provisions of this Part.
(3) Establishing a system of regulation which will permit orderly access to surplus lines insurance in this state and encourage authorized insurers to provide new and innovative types of insurance available to consumers in this state.
* * *
Pursuant to statutes specifically enacted to protect Louisiana insureds from having insurance placed with financially unstable surplus lines insurers, Louisiana law imposes a very specific duty on licensed brokers to not write insurance with any company not on the “white list.” Specifically, La. R.S. 22:1262.1(A) provides:
No surplus line broker shall place surplus line insurance with an insurer who is not on the list of approved unauthorized insurers as compiled and maintained by the commissioner of insurance.
Defendants argue that La. R.S. 22:1262 does not apply. They contend the first general phrase found in La. R.S. 22:1269(A) controls instead of the specific phrase found later in that same article that states “brokers placing ocean marine insurance shall be subject to the provisions of La. R.S. 22:1262” and instead of the specific statute La. R.S. 22:1262.1(A). La. R.S. 22:1269(A) provides:
The provisions of R.S. 22:1256 through 1268 and 1270 controlling the placing of insurance with unauthorized insurers shall not apply to reinsurance or to the following insurances when so placed by licensed surplus lines brokers of this state, except that a tax on the portion of the premiums received from ocean marine and foreign trade coverages which is properly allocable to the risks or exposures located in this state during the preceding calendar quarter shall be due on the dates and in a manner provided in R.S. 22:1265 at the rate of five percent, such tax when collected by the commissioner of insurance shall be paid to the state treasurer and to be | ficredited to the state general fund, and such licensed surplus lines broker placing ocean marine insurance shall be subject to the provisions of R.S. 22:1262, notwithstanding the provisions *106 of R.S. 22:1249, 1249.1 and 1252, and must show on any document issued by and/or delivered by them evidencing such insurance, all of the insurers and must clearly stamp on any such documents that on the demand of the assured or its representative the latest financial statements of any such insurers are available to its office for inspection as follows:
(1) Ocean marine and foreign trade insurance.
[Emphasis added.]
The defendant called upon Mike Bout-well and Robert Felton to testify on its behalf. Mr. Boutwell, employed by the Commissioner of Insurance, testified that his interpretation of the law is that a surplus line insurer need not be on the “white list.” He and Mr. Felton further testified that being on the “white list” does not guarantee solvency of an insurer.
While we agree with their testimony to the effect that neither inclusion on the “white list” nor anything else can positively guarantee financial security, the insurance law sets forth these requisites found in La. R.S. 22:1248 et seq., as safeguards to lessen the risk of an insurer becoming insolvent. A licensed Louisiana surplus lines broker must comply with statutory guidelines and the duties they impose. An insurance broker has fiduciary duties and is not a mere “order taker.” Gulf Coast Bldg. Systems, Inc. v. United American Sur. Co., Ltd., 614 So.2d 1360 (La.App. 3 Cir.1993).
However, Mr. Boutwell’s testimony regarding the proper interpretation of this statute does not free us of our duty to follow La. C.C. art. 9, which states:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
Here, finding the defendant brokers in violation of their duty to place Louisiana insureds only with approved unauthorized insurers leads to no absurd consequence and is what the law states. An absurd result would be for us to infer that the catch-all phrase in a general article 22:1269, i.e., “The provisions of R.S. 22:1256 through 1268,” automatically negates the specific phrase in that same article, “licensed surplus lines broker placing ocean marine insurance shall be subject to the provisions of La. R.S. 22:1262.” Defendant’s expansive interpretation of La. R.S. 22:1269, would negate the more specific and recent article, La. R.S. 22:1262.1, and therefore violate La. C.C. art. 13, which states laws should be read in pari materia.
Moreover we note that the requirements of La. R.S. 22:1262 are very basic to accomplishing the purposes of La. R.S. 22:1248, i.e., protecting Louisiana insureds. In sum, La. R.S. 22:1262 and 1262.1 require that the insurer who wishes to underwrite in this state provide to Louisiana’s Commissioner of Insurance a copy of its current annual financial statement certified by the insurer and an actuarial opinion that simply reflects a minimum level of financial soundness.
Defendant’s interpretation flies in the face of jurisprudence as well. In Popich Bros. Water Transport, Inc. v. Gulf Coast Marine, 97-0902 (La.App. 4 Cir. 1/14/98), 705 So.2d 1267, this Court held that after the 1997 amendments to La. R.S. 22:1248 et seq., a broker no longer has a duty to investigate the financial soundness of an insurer,[2] but rather simply must verify the *107 unauthorized insurer is on the “white list” (which means that the Commissioner of Insurance has verified the financial solvency of the unauthorized insurer). The trial court was correct in finding that the broker, defendant, had a duty to verify that HIH was on the “white list” in order to place a Louisiana insured’s policy with HIH.
We find the trial court committed legal error in finding that the risk of HIH’s insolvency was not encompassed in the scope of the broker/defendant’s duty. As stated in La. R.S. 22:1248, the purpose of these laws are to protect Louisiana insureds from insolvent insurers. It is certainly a foreseeable risk that an insurer will default on its obligation to pay in the face of a claim. Had HIH paid the claims made by the insured’s employee, Russell Cacho, which were covered under the HIH policy, insured/plaintiff would not have incurred the economic loss it seeks to recover.
The defendant broker violated certain statutory guidelines that aid in assuring the fiscal soundness of an insurer. The statutes do this by- compelling the insurer to provide for review certified financial statements to the Commissioner of Insurance. The Commissioner then reviews the financial statements and determines whether this insurer should be on the “white list.” The broker’s duty is simply to place unauthorized insurance with insurers on the “white list.” We find that’ because this duty lessens the risk of insolvency, it necessarily encompasses the risk of an insurer’s insolvency.[3] Thus, defendant’s breach of this duty created to protect against insolvency, makes defendant liable to the plaintiff for this insurer’s insolvency. This reasoning is also in accord with our finding in Popich, which is a case on point.
Finally, the defendant raises the issue of preemption on appeal. The trial court denied defendant’s exception of preemption at trial. Defendant did not appeal this ruling. La. C.C.P. art. 2133 states:
B. A party who does not seek modification, revision, or reversal of a judgment in an appellate court, including the supreme court, may assert, in support of the judgment, any argument supported by the record, although he has not appealed, answered the appeal, or applied for supervisory writs. [Emphasis added.]
The issue of preemption is not covered within the scope of the Judgment that is appealed. The only issue properly before us is the Judgment that dismisses plaintiffs claims with prejudice due to a finding that the risk was not encompassed within the duty, not preemption. Thus, this issue is not before us.,
Therefore, we reverse the Judgment of the trial court as it concerns liability and remand for a determination of damages.
REVERSED AND REMANDED.
ARMSTRONG, C.J., CONCURS.

. Effective June 1, 1999, Sedgwick merged into J & H Marsh and McLennan of Louisiana, Inc., who changed its name to Marsh U.S.A., Inc.

. As dicta, we posit that 22:1269's last sentence is a remnant of this obsolete duty, when *107 it states that the latest financial statements need be available for the insured’s viewing at the broker’s office. Although it could be seen as a precautionary measure to further protect the insured.

. As the trial court did we apply the duty-risk analysis, which is most common in torts. We note that a contract analysis may also be applicable.